## DANIEL CASSELL
### *v.*
## HARVEY L. ROSS *et al.*

1.   CONSIDERATION — *what is sufficient.* Where a grantee of land requested his grantor to purchase an outstanding title, and executed his note to him for a given amount as a part of the price to be paid therefor, it is held that such purchase by the grantor of the outstanding title, whether the same was perfect or imperfect, was a sufficient consideration to support the note, notwithstanding the character of the original conveyance was such that any title subsequently acquired by the grantor would inure to the benefit of his grantee.

2.   Nor would the fact that the grantee and maker of the note was at the time ignorant that, under the law, a title subsequently acquired by the grantor would inure to his benefit under the covenants in his deed, at all affect the consideration of the note.

3.   It has been held that the compromise of a doubtful right is a sufficient consideration for a promise, and that it is immaterial on whose side the right ultimately proves to be, as it must be on one side or the other.

4.   So, even if it be doubtful whether the outstanding title, to aid in the purchase of which the note was given, was paramount to that already held by the grantee, or whether the covenants of the grantor in the original conveyance would have covered the value of the land, still, as a compromise between the grantee and grantor, it would have been a sufficient consideration for the note.

Cassell *v.* Ross et al.

5. Or, suppose the grantee was doubtful of his grantor's ability to respond to his covenants, that would have formed a sufficient consideration for the note.

6. Even if the outstanding title so sought to be purchased was really worthless, yet, if the maker of the note did not so regard it, and was willing to give the amount to set his doubts as to his title at rest, that was a sufficient consideration.

7. FAILURE OF CONSIDERATION — *what constitutes.* In this case the grantor was to purchase in the outstanding title, and upon the payment of the note mentioned, was to execute to the maker of the note a quitclaim deed for the premises, which he had failed to do, but this did not constitute a failure of the consideration of the note, as the maker had not paid it, which he should do before the other party would be bound to make the deed.

8. VENDOR AND PURCHASER — *when the former is bound to convey.* Where a party agrees to execute a deed upon the payment of a given sum of money, he is not in default in not making or tendering the deed while any portion of the money remains unpaid. The purchaser is bound to pay, or offer to pay, before he has a right to demand the deed.

9. HOMESTEAD RIGHT — *what constitutes purchase-money of the premises, and herein of the powers of the husband in respect thereto.* The homestead act was designed more for the protection of the wife and children than of the husband; but the title being usually vested in the latter, he must be treated as acting, at least to some extent, as their trustee for the protection of this right which the law has cast upon them. And by virtue of his relation to their rights, he is necessarily vested with the power to perform all acts necessary to secure the title, and thus effectuate the design of the statute.

10. He is, therefore, authorized, when necessary, to purchase an outstanding title for the purpose of securing the enjoyment of the right; and he may do this upon credit, with or without the consent of the wife.

11. Whether the amount thus agreed to be paid by the husband for the outstanding title, will be so far regarded as purchase-money of the premises, as to prevail against the homestead right, will depend upon the fact whether such outstanding title was paramount to that already held. If it was paramount, then the premises may be sold for the satisfaction of the debt created in its purchase, regardless of the claim of homestead. If, however, it was not paramount, the court will enjoin all proceedings to deprive the wife of the homestead to the extent of one thousand dollars.

12. The husband being the head of the family, the presumption is, that he acts for their benefit when he acquires or perfects a title to the homestead, and that any outstanding title which he may purchase, was paramount to that under which he previously held possession.

13. But the wife is not estopped thereby from showing that the outstanding title, thus purchased by the husband, was not paramount to the one they already held, and thereby protect the homestead right from being disturbed in the collection of the price agreed to be paid therefor.

Cassell *v.* Ross et al.

14. PARTIES — *where homestead right is involved.* Upon bill filed to protect the homestead from sale for the price agreed to be paid by the husband for an outstanding title to the premises, the wife is a necessary party, to the end that her rights, as involved in the question whether such outstanding title was paramount to that under which the land was previously held, may be determined.

15. DEED OF TRUST — *powers of trustee.* Where a deed of trust given to secure a debt confers the power upon the trustee, in the event of non-payment, to sell the premises for cash, he cannot sell upon a credit; and if he does so, a court of chancery will set aside the sale at the instance of the debtor.

16. It may be that where the trustee who thus improperly sells upon credit is also the creditor whose debt is to be satisfied by the sale, and he makes an unconditional tender of any surplus of the proceeds of the sale to the debtor, in apt time, that a court of equity would not be inclined to set aside the sale upon the mere ground that the purchaser was not required to pay the money.

17. But an offer by the trustee who has made such a sale, to pay over the surplus to the debtor upon condition that he would surrender the possession of the premises to the purchaser, is not in any sense a compliance with the terms of the deed prescribing that the sale should be for cash. The trustee has no power to impose such a condition, but must leave the purchaser to his ordinary remedies for obtaining the possession.

18. PURCHASE WITH NOTICE. A purchaser at a sale under a deed of trust cannot insist that he had no notice that the sale was not made in accordance with the requirements in the deed. He must know that he is dealing with a trust fund, and must see to it that all the conditions of the trust deed, up to the execution of the deed to himself, were performed by the trustee.

With a remote purchaser it is believed to be different, but the immediate purchaser at the trustee's sale must be held to see that all precedent conditions of the sale are complied with by the trustee.

19. So, where the trustee sold the premises upon credit when the deed required the sale to be for cash, the purchaser could not escape the effect of the irregularity on the ground of want of notice.

20. SWORN ANSWER IN CHANCERY — *taken as true if not disproven.* Where a bill in chancery calls for an answer under oath, so far as the answer is responsive to the bill, it must be taken as true, unless contradicted by the proofs.

APPEAL from the Circuit Court of Fulton county, the Hon. C. L. HIGBEE, Judge, presiding.

This was a suit in chancery instituted in the court below by Daniel Cassell against Harvey L. Ross and Ezra Dilworth.

It is stated in the bill that in September, 1852, the complainant, Cassell, purchased from the defendant Ross, a certain tract of land described as the southeast quarter of section seven, in

township number three, north of range one, east of the fourth principal meridian, situate in Fulton county, for the sum of $550, a portion of which amount having been paid, Ross and wife, on the 26th day of March following, executed and delivered to him a deed of conveyance of the premises, containing full covenants. To secure the residue of the purchase-money Cassell gave his note and executed a mortgage upon the land, which was finally satisfied on the 3d of August, 1854.

It further appears from the bill that Cassell, with his family, entered into possession of the premises soon after his purchase, and has ever since occupied the same as his homestead.

It is averred that after the execution of the conveyance from Ross and wife to Cassell, and subsequent to the full payment of the original purchase-money of the premises, and while the complainant was in the quiet and peaceable possession and enjoyment thereof, Ross approached the complainant, representing to him that there was a certain outstanding patent title to said land held by some individual, paramount to that of the complainant, and that unless complainant would give said Ross his note for $200, so as to enable him to purchase such pretended patent title, the complainant would be evicted from the premises. That complainant is a German, but little acquainted with the English language, and during all his transactions with said Ross in regard to this land, was ignorant, unlearned, easily overreached and ignorant of his rights; that being so approached by Ross with such pretenses, being ignorant of his rights in the premises, and believing Ross' representations, and fearing that otherwise he would lose his land, he complied with Ross' request and gave him his notes for $200, not knowing that Ross would be liable to him under the covenants in his deed in case of his eviction through any outstanding title, and not knowing that any outstanding title purchased by Ross would inure to the benefit of complainant. That the two notes so executed and delivered to Ross under these circumstances, were both dated April 24, 1856, for $100 each, payable to Ross' order, one and two years from their date, respectively, with interest at six per cent. per annum.

It is alleged in the bill that in June, 1856, Ross executed and delivered to complainant a bond in the penalty of $400, conditioned that Ross should execute and deliver to him a quitclaim deed for the premises on the payment of the two $100 notes mentioned, and all the taxes which might have accrued against the land.

The complainant avers that he paid all the taxes assessed upon the land since the 1st of April, 1856, and that in April, 1858, he paid Ross a portion of the money called for in said notes, but that Ross, nor any one for him, had ever executed and delivered, or tendered to complainant any deed under the bond; that the sole consideration for said two $100 notes was the said bond for a quitclaim deed, which still remains undischarged.

The bill further states that in April, 1858, Ross induced the complainant, by certain unfounded representations, to give him a deed of trust on said land to secure the balance remaining unpaid of said $200 ; that he gave the deed of trust in ignorance of his rights, relying upon the representations of Ross, 'and supposing he was giving only an ordinary mortgage. That he never intended to give a deed of trust, but only a mortgage, and executed the instrument in ignorance of the effect of what he was doing.

The deed of trust was executed by the complainant, Cassell, alone, his wife not having joined therein; and, in the event of non-payment of the debt thereby secured, conferred upon Ross the power of sale for cash, upon his giving certain prescribed notice thereof. The deed contained no release or waiver of the homestead right of Cassell, and it is insisted in the bill that the two $100, notes mentioned, or the balance thereof, to secure which the deed of trust was executed, were not given for the purchase-money of the premises, nor for any other consideration that could prevail against the homestead right of complainant, but solely in consideration of the promise of Ross to purchase in the outstanding patent title.

The bill further sets forth that the complainant not having paid the residue of the $200 which was secured by the deed of trust, in February, 1860, Ross, in pursuance of some sort

of notice, the character of which the complainant did not know, proceeded to make sale of the premises to the defendant Dilworth for the sum of $430, no part of the overplus of which has ever been paid or tendered to the complainant.

That Ross undertook to convey the premises to Dilworth, but did not make a sufficient deed, and he was fearful that would be done unless Ross should be restrained therefrom; that both Ross and Dilworth claim that the latter is the owner of the land in question solely by virtue of the sale under the deed of trust mentioned; that complainant is informed and believes that Dilworth has never paid to Ross any portion of his bid upon the land.

It is further alleged that subsequently to the sale under the deed of trust, an action of ejectment was instituted on the common law side of the court below, in the name of Dilworth, against the complainant, Cassell, for the recovery of this land; but afterwards a new count was added to the declaration in that suit, in which the premises were claimed in behalf of Ross himself. A trial was had, and a recovery in favor of Ross; upon which Cassell took a new trial under the statute, and the suit is still pending.

The bill charges that Ross and Dilworth have combined and confederated together against the interests of the complainant, and that Ross is the only real party in interest in the ejectment suit, Dilworth having no interest in the premises, his name being used only to enable Ross the more easily to encompass and embarrass the rights of the complainant.

Complainant avers that since his purchase of the land from Ross, and his occupancy thereof, he has put lasting and valuable improvements on the same of the value of about $800; and that the cash value of the premises at the time of filing this bill was from $1,000 to $1,500.

It is insisted in the bill that the note given by complainant to Ross for the residue unpaid of the $200, before mentioned, and to secure which the deed of trust was executed, ought to be ordered to be delivered up to complainant to be canceled; but in case it should be held otherwise by the court, and that the

deed of trust ought to be enforced, then the complainant offers to pay into court, subject to its order, the whole amount appearing to be due thereon, or the whole amount bid at the sale, as the court shall order, together with interest and costs, for the purpose of redeeming the land from the sale. The bill prays that such redemption may be allowed if deemed equitable; that the complainant's homestead be saved to himself and family; that Ross and Dilworth be enjoined from further proceedings in the ejectment suit; and that Ross be restrained from executing, and Dilworth from receiving, any further conveyance of the land under the sale made by Ross. There was also a prayer for general relief. The bill was sworn to; and the master in chancery granted an injunction in accordance with the prayer in the bill, which was duly issued and executed.

The defendants answered under oath. The answer of Ross admits the statements in the bill in reference to the original purchase of the land from him by Cassell, the payment of the purchase-money therefor, and the execution and delivery of the deed of conveyance, with covenants as described, to Cassell. Admits also the occupancy of the land by Cassell and his family as a homestead, as stated in the bill.

Ross denies that he approached complainant for the purpose of inducing him to purchase any outstanding title to the land, or that he ever represented to complainant that any person held another title to the premises paramount to that of complainant; but avers that he advised complainant to remain on the land, cultivate it, pay the taxes, and give no attention whatever to any outstanding titles or pretended titles to the land; that he offered, at the same time, to defend complainant's possession against any claim set up against it, or to take the land back and refund to him the purchase-money with ten per cent. interest, pay for all improvements made by complainant, and refund the taxes paid by him. It is further alleged in the answer, that complainant, from time to time, urged Ross to purchase for him a certain outstanding title which purported to be a patent title to said land, which Ross declined to do; that complainant still insisted, and finally offered to pay $200 for said title, if Ross

would purchase the same, and that he would make payment in one and two years from the time of purchase, with interest at six per cent., and give his written obligation to that effect; that Ross, moved by complainant's entreaties, did buy in the said title for $400, at the same time remonstrating with Cassell that said pretended title was not paramount to that which he already held; but complainant urged that he preferred to pay $200 and have his mind at ease on the question of title. Ross further answers, that subsequently he entered into an agreement with complainant for the joint purchase of said patent title, which agreement is substantially as follows:

VERMONT, April 24, 1856.

"I, Daniel Cassell, do hereby agree to pay to H. L. Ross two hundred dollars, if he shall purchase the patent title on the S. E. 7, 3 N. 1 E., and make me a deed to the same, to be paid in one and two years, with six per cent. interest from the time he shall buy said title; the same being the land I now live on."

(Signed) "DANIEL CASSELL."

That afterwards, on the 22d of May, 1856, in pursuance of said agreement, he purchased the patent title, or what purported to be a patent title to said land, for the sum of $400.

Ross admits complainant is a German, but does not think him ignorant, unlearned, or unfamiliar with business transactions, or easily overreached. He admits the giving of the bond for a quitclaim deed, but avers that the bond refers, or was intended to refer, to the agreement above copied, dated April 24, 1856, and not to the two notes of complainant mentioned in the bill, Ross insisting that said two notes, or any other notes, were not given by Cassell until about the time when the first payment was made under the foregoing agreement of 24th of April, when two of $53 each, on short time, were given by Cassell to Ross, which included the first $100 payment under said agreement, and the interest accrued thereon, one of which $53 notes was assigned by Ross to one Tunnicliff, and the other was paid by complainant to Ross himself. Ross says that when the last payment under said agreement became due, he offered, and was ready

and willing to make a quitclaim deed to Cassell for said land, and held himself in readiness so to do down to the time of the sale under the deed of trust.

Ross denies all unfounded and improper representations to Cassell, as charged in the bill, in reference to procuring the execution of the deed of trust, and asserts that it was executed by Cassell of his own free will, knowing it to be a deed of trust, he having been so informed, and the same having been read over to him. Denies that the note to secure which it was given, was wholly and solely for the balance unpaid of the $200 and interest thereon, promised to be paid for the said pretended outstanding title; but states that said note, which was for the sum of $124, was given in part only for the balance unpaid of said $200, the residue thereof being made up of one or two small notes which Ross held against complainant for store goods, and for the service of a stallion to a mare, which amounts added together made the aggregate for which said note of $124, and the deed of trust to secure the same, were given.

The answer admits that the debts embraced in said note of $124, were contracted after the 4th day of July, 1851.

Admits the non-payment thereof, and the sale under the trust deed as charged in the bill, but avers it was made pursuant to notice duly given; that Dilworth became the purchaser at $430, and was the highest and best bidder; that the sale was openly and notoriously made; and that a deed of conveyance was then made to Dilworth.

The answer states that Dilworth did not pay the amount of his bid at the sale, but executed his note therefor, payable one day after date with interest at ten per cent., which Ross accepted, and which has never been paid.

It is further stated in the answer, that, at the time of the sale, Ross informed complainant that the proceeds of the sale, over the $124, and interest and costs, were ready for him whenever he would surrender the possession of the land, and that Ross was ready and would pay said overplus to him on his surrendering the premises to Dilworth; but that complainant refused, and still refuses, to receive said overplus or surrender the possession of

the land.   And Ross further answers, that, after said sale, judg ments were rendered against him as garnishee in favor of some of complainant's creditors, amounting in all to about $106.   He admits the pendency of the action of ejectment, as charged in the bill, but denies that he has any interest in the same, or in the premises sought thereby to be recovered, or that he and Dilworth have confederated together against Cassell's interests.

Denies that the improvements made upon the land by complainant exceed in value $250 or $300, and states that he has diminished its value beyond that amount by cutting and carrying away timber; and that the value of the premises at the time of filing the answer would not exceed $600.

The separate answer of the defendant Dilworth neither admits nor denies the allegations of the bill, except as follows: The answer admits the sale of said real estate described in the bill under the said deed of trust; states that he became the purchaser of said land at the bid of $430; that he had no knowledge whatever of the personal transactions of Cassell between said defendant Ross and said complainant Cassell; that he purchased the land, at said sale, for his own benefit, received a deed for the same, executing to said defendant Ross his promissory note for the purchase-money, payable in one day after date, with interest at the rate of ten per cent.; that he bid, as he believes, the full value of the land, became the purchaser in good faith, and ignorant of anything pertaining to said deed of trust; denies all combination and confederation with said Ross against the interests of complainant; denies that said Ross is the only real party in interest in said suit; denies that he has made no payment on said land; denies that said Ross is using his name in said ejectment suit only the more easily to encompass and embarrass the rights of complainant, but avers, on the contrary, that he is the only real party in interest in said ejectment suit; admits that he is prosecuting said ejectment suit for the recovery of the possession of said land in his own right, and avers that no other person has any interest in said suit.   Dilworth says that as to any other matters stated in the bill he has no knowledge.

Upon the state of case as thus presented, the Circuit Court, at

the June Term, 1863, rendered a decree dissolving the injunction and dismissing the bill. The complainant thereupon took this appeal. The questions presented by the assignment of errors are, *first*, whether there was any consideration for the note given by Cassell to Ross on the purchase of the outstanding title; *second*, whether that became purchase-money so as to prevail against the right of homestead, and herein of the power of the husband alone to create a charge upon the homestead; *third*, as to the regularity of the sale under the trust deed, being upon credit, when the deed required it to be for cash, and herein how far the purchaser at a trustee's sale is chargeable with notice of irregularities.

Messrs. JUDD, BOYD and JAMES, for the appellant.

Messrs. ROSS, TIPTON and WINTER, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The purchase of the outstanding title seems to have formed a part of the consideration of the debt secured by the deed of trust. The bill alleges that it formed the consideration of that entire debt, but the answer sets up the fact, that one hundred, of the two hundred dollars, which appellant had agreed to pay towards the purchase of the outstanding title, had not been paid. That for the hundred dollars first falling due, appellant had given his two notes of fifty-three dollars each to appellee Ross. That one of these notes had been paid, and that appellee Ross had assigned and transferred the other. The bill also alleges that the note for one hundred and twenty-four dollars was for a portion of this two hundred dollars, for the purchase of the outstanding title. But the answer of Ross states that the remaining one hundred dollars of that purchase, with its accruing interest, together with a small note which he held for goods purchased by appellant, constituted the consideration of the note. The bill calls for the answer to be under oath, and so far

as it is responsive to the bill, it must be taken as true, inasmuch as it is not contradicted by evidence.

The note for goods embraced in, and forming a part of this note, to that extent, was beyond all question a consideration. And we have no hesitation in saying that the purchase of the outstanding title, whether perfect or imperfect, if not induced by fraud, was a sufficient consideration for the remainder. It is a maxim of universal application, "that ignorance of law excuses no one." Appellant, then, cannot be heard to say, that he was ignorant that under the law a subsequently acquired title, by Ross, would, under his former covenants, inure to the benefit of appellant. The answer of appellee Ross clearly and unequivocally denies that there was any fraudulent means used to induce appellant to purchase this outstanding title, or that Ross urged or even requested appellant to purchase, but, on the contrary, that the purchase was made at the urgent solicitation of appellant; that Ross made the purchase, and with the previous understanding and agreement that appellant should refund two hundred dollars of the four hundred dollars of purchase-money. And this allegation, responsive to the bill, is uncontradicted by any evidence in the record. If this be true, and it must be so considered, upon what principle of justice or fairness can it be said, that because that title inured to his benefit, he will not pay the portion he agreed to pay before the purchase was made. Is he now to be permitted to escape payment, and leave Ross the whole burthen, when Ross remonstrated and advised against the purchase?

Suppose this title to have been paramount, and that under the covenants contained in Ross' deed to appellant upon its purchase, it would pass by the force of these covenants to appellant's benefit, it could not be said to form no consideration for the notes given on its purchase by appellant. The utmost extent of Ross' liability under those covenants, would be the purchase-money with interest, and, possibly, an attorney's fee in defending an ejectment suit for possession. Yet the premises may have been, as alleged in the bill, worth, with their improvements, double that sum or more. This, then, would have formed

a strong inducement for the purchase of the outstanding title by appellant. Its purchase, if paramount, would have been a protection to him of all of the value of the premises beyond that portion covered by Ross' covenants.

In the case of *McKinley* v. *Watkins*, 13 Ill. 144, it was held, that the compromise of a doubtful right is a sufficient consideration for a promise; and that it is immaterial on whose side the right ultimately proves to be, as it must be on one side or the other. Then, if it is conceded that it is doubtful whether this outstanding title was paramount, or whether Ross' covenants would have covered the value of the land, still, as a compromise between appellant and Ross, it would have been a sufficient consideration for the note.

Or, suppose appellant was doubtful of Ross' ability to respond to his covenants, that would have formed a sufficient consideration for the note. Even if it were conceded that this outstanding title was worthless, yet it seems that appellant did not so regard it, as his fears were excited, and he was solicitous, and even urgent, to procure it, to avoid uncertainty and trouble, if not positive loss. When he entered into the agreement with Ross for its purchase, he was willing to give two hundred dollars to have all of those doubts set at rest, and this constituted a sufficient consideration, as Ross resorted to no unfair or fraudulent means to excite his fears or create those doubts. Nor does the fact that Ross has not executed the quitclaim deed constitute a failure of consideration, inasmuch as he was not bound to do so until the two hundred dollars were paid, which is admitted not to have been paid in full. Nor was Ross in default in not making or tendering such a deed, as appellant was bound to pay, or offer to pay, before he had a right to demand the deed. For these reasons, we are unable to perceive that the note and deed of trust should be canceled.

The next question presented by the record is, whether the note secured by the deed of trust is purchase-money of the homestead of appellant. He, with his family, at the time of the purchase, resided, and still resides, upon the premises. We have seen that all but a small portion of this note was given for

this outstanding title. If appellant had not been holding under a prior acquired title, this question would hardly have been raised. And yet there is nothing in this record from which it can be inferred that the outstanding title was not paramount.

But was the wife estopped to show that she or her husband held the paramount title when the purchase was made of Ross? This depends upon the construction to be given to the act creating the exemption.

The design of the framers of the homestead law manifestly was, to secure a home to the wife and children of the debtor. It was for their protection, more than his. But the title being usually vested in the husband, he must be treated as acting, at least to some extent, as their trustee for the protection of this right which has been cast by the law upon the wife and children. And by virtue of his relation to their rights, he is necessarily vested with the power to perform all acts necessary to secure the title, and thus effectuate the design of the statute. He is, therefore, authorized, when necessary, to purchase an outstanding title for the purpose of securing the enjoyment of the right. And when he has made such a purchase, it will be presumed to have been necessary; but this presumption may be rebutted by the wife, upon showing that she or her husband owned the paramount title when the outstanding title was acquired.

If the wife shall show that the real title was so held at the time the outstanding title was obtained, then the consideration agreed to be paid will not be regarded as purchase-money, so as to subject the land to its payment. On the contrary, if the wife fail to show that the paramount title was already held, then it must be considered that the money agreed to be paid for the subsequently acquired title is purchase-money within the statute. The husband being the head of the family, the presumption is that he acts for their benefit when he acquires or perfects a title to the homestead. When already in possession under a defective title, he may, with or without the consent of the wife, acquire an outstanding title on credit, and the husband cannot, but the wife may, deny that it was paramount. And until it appears that

17 — 33D Ill.

such a title was not acquired, the consideration agreed to be paid will be treated as purchase-money.

The wife in this case was a necessary party to the bill. She should have been before the court that her rights might have been acted upon. If before the court and it appeared that this outstanding title was paramount, then the court would decree a sale to enforce the payment of the purchase-money, or if, on the contrary, it was worthless, then to enjoin all proceedings to deprive her of the homestead to the extent of one thousand dollars.

We now come to the question of the validity of the sale under the deed of trust. The deed authorized Ross to sell upon default of payment of the money, after giving the prescribed notice, for cash, to the highest bidder. The answers of both defendants admit that it was not sold for cash, but that the purchaser gave his note for the entire amount for which the land was sold. Whatever may be said of the power of Ross to give time on the sum due to him, there can be no pretense that he had the right to give any time for the payment of the surplus. As to that portion of the purchase-money he could not release the purchaser, nor could it be discharged in any other mode, or in anything else, than by the payment of the money at the time of the sale. Appellant had conferred no such power by the deed of trust, and he cannot be required to receive Dilworth's note instead of money, nor can he be delayed in the receipt of the surplus over the payment of the debt secured by the trust deed, until Dilworth shall pay his note to Ross. Nor can he be compelled to assume the hazard, however remote, of Ross' insolvency, or to submit to delay in the receipt of the money. He, when the deed of trust was executed, provided for the immediate payment to him of the surplus, but this sale, if sustained, would defeat that provision.

Nor was the offer of Ross to pay the surplus to appellant, on the condition that he would surrender the possession of the land to the purchaser, in any sense a compliance with the terms of the deed of trust. He had no power to impose new terms and conditions, or to alter or vary those contained in the deed. All

of his power was derived from the deed, and all acts outside of and beyond its provisions were void. Such a condition was in violation of his duty as a trustee. Under the provisions contained in the deed, the purchaser would be left to his ordinary remedies for the recovery of possession. It may be, that had Ross made an unconditional tender of the surplus to appellant, in apt time, that a court of equity might not have been inclined to set aside the sale because the purchaser was not required to pay the money, if the transaction appeared to be *bona fide*, and free from other objections.

In this case Dilworth cannot protect himself by insisting that he was a purchaser in good faith, without notice. He was bound at his peril to examine the title he was purchasing, and if he did so, he found that Ross was dealing with a trust fund. The notice of the sale should have disclosed that fact, and if so, it gave him that notice. Upon discovering that it was a trust fund, he was bound to see that at least all of the conditions of the trust deed, up to the execution of the deed to himself, were complied with and performed by the trustees; and when he became a purchaser upon time, he became a party to the violation of the condition upon which the sale could alone be made. Being chargeable with notice, he cannot evade the effect of the irregularities attending the sale. With a remote purchaser it is believed to be different, but the immediate grantee, under the trustee's sale, must be held to see that all precedent conditions of the sale are complied with by the trustee. For these various reasons the sale should have been set aside.

The decree of the court below is reversed, and the cause remanded, with leave to the complainant to amend his bill, and the defendants to file answers to such amendment, and to both parties to take evidence in the cause; and if the court shall find that the note was given for the purchase-money of the paramount title, in accordance with the views herein expressed, that a decree be entered for a sale of the land; if, however, it shall appear not to have been purchase-money, that a decree be entered for the payment of such sum as may be found due, and order its payment on a day to be named in the decree, and on

default of such payment, that the master proceed, in the manner prescribed by the statute, to ascertain whether the land is worth more than one thousand dollars, and, if so, to subject the overplus to sale, as required by the homestead law.

*Decree reversed.*