EDWARD HAMILTON

*v.*

FERDINAND LUBUKEE *et al.*

1. NOTICE—*of sale under power in a mortgage—its requisites.* Where the advertisement or notice of a sale of real estate under a power of sale contained in a mortgage, describes a different and other or larger indebtedness than that described in or secured by the mortgage, the sale will not thereby be vitiated so as to entitle the mortgagor to redeem, it not being shown that the property was injuriously affected by it, or bidders deterred thereby from attending the sale, or that it was so published for a fraudulent purpose.

2. ASSIGNMENT—*power of sale in a mortgage.* It has been held that where a mortgage gives to the mortgagee, or his assigns, power to sell upon default in payment, an assignment of the note secured by the mortgage, will vest the power of sale in the assignee—the power thereby passes from the mortgagee, and cannot be executed by him.

3. But the mere assignment of the mortgage by an endorsement thereon, without an assignment of the note, the mortgage not being an assignable instrument by endorsement, either by the common law or under the statute, will not operate to pass the power of sale to the assignee, but it will still remain in the mortgagee.

4. PURCHASERS—*how far chargeable with notice of irregularities.* The original purchaser at a sale by a mortgagee, under a power of sale contained in the mortgage, is chargeable with notice of defects and irregularities attending the sale, and cannot evade their effect.

5. But with remote purchasers the rule is different; all matters *in pais,* affecting the sale, it not being void but only voidable, must be brought home to their knowledge, on a proper case made, sustained by proof.

6. LAPSE OF TIME—*its effect upon irregularities in sale by mortgagee.* A mortgagor should avail himself in apt time of irregularities in a sale of the premises by the mortgagee under a power in the mortgage. So a delay of four years after the mortgagor had knowledge of the sale, and proceedings under it, was held to preclude him from maintaining a bill to redeem, as against remote purchasers, on the alleged ground of a defective notice of the sale and inadequacy of price.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

The opinion states the case.

Mr. JAMES REDFIELD and Mr. DAVIS J. CROCKER, for the appellant.

Messrs. ROSENTHAL & PENCE, and Mr. H. T. STEELE, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Cook Circuit Court, by Edward Hamilton, complainant, against Ferdinand Lubukee, Nathan Eisendrath, Godfrey Snydacker and Moses Snydacker, members of the firm of Eisendrath & Co., and others, seeking to redeem certain lots or parts of lots in the city of Chicago, which were sold by Lubukee, under a mortgage executed by complainant and one Willard M. Fuller to Lubukee, to· secure the payment of four certain promissory notes, amounting in all to $3,500, being the purchase money of the lots, and becoming due in one, two, three and four years from their date, and dated, respectively, August 1, 1860.

Answers were put in by the defendants, replications filed and proofs taken, and on the hearing the bill was dismissed for want of equity.

To reverse this decree, complainant brings the record here by appeal.

It appears from the mortgage, bearing even date with the notes, that it contains a power of sale, to be exercised by the mortgagee, his heirs or assigns, in case of default in the payment of any of the notes, or of the interest. Notice of the sale was required to be made in a newspaper published in Chicago, ten days before the sale, and the mortgagee was empowered to make and deliver a deed to the purchaser thereof. It also appears the mortgage was made subject to another mortgage of $1,000 then on the premises, although not mentioned in the mortgage.

The notes were sold and delivered by Lubukee to the firm of Eisendrath & Co., and the mortgage assigned to them, the firm being then composed of Nathan Eisendrath and Godfrey Snydacker, Moses Snydacker not becoming a member of it until some months after the sale.

The first note, and the interest on the other notes, became due on the 1st day of August, 1861, and were not paid. At the request of Fuller, one of the makers of the notes and one of the mortgagors, and a partner of complainant, the premises were advertised for sale, in the name of Lubukee, in the mode required by the mortgage, and were sold to Moses Snydacker, by Lubukee, for $2,500, and subject to a former mortgage to one Swift of $1,000, which, with the interest due upon it, then amounted to $1,100. At the same time, the notes of complainant and Fuller, given for the property, were canceled by Eisendrath, by burning them in presence of Fuller, one of the makers.

The real value of the property when sold, would appear, from the testimony, to have been about $5,000.

The other defendants, nineteen in number, are purchasers of the premises, in separate parcels, of Snydacker, and have expended near $30,000 in valuable improvements upon them. The lots, without the improvements, were estimated, at the time the bill was filed, (April term, 1867,) at about $18,000. It

27—51ST ILL.

further appears, that Moses Snydacker had divested himself of all interest in the premises before the bill was filed, to Eisendrath, in 1861, and to Hamlin and the others, subsequently, and for a valuable consideration, and that they purchased without notice of any defects or irregularities in the sale or proceedings under the mortgage, before or since the sale.

The first point made by appellant is, that the advertisement or notice of the sale described a different and other or larger indebtedness than that described in or secured by the mortgage, to wit: an indebtedness of $1,000 over and above the amount really due by the mortgage.

Admit the fact to be so, it is not shown that the property was injuriously affected by it, or bidders deterred thereby from attending the sale, nor is it shown it was so published for a fraudulent purpose; and if it was, there is no evidence the defendants, or any one of them, participated in it, or had any knowledge of it.

The next point is, that Lubukee had nothing to do with the sale, and knew nothing about it, and that Moses Snydacker fraudulently obtained from him the deed for the property, of the contents of which Lubukee was ignorant.

It appears that Lubukee, the mortgagee, was a man whose memory had become impaired by a fall, and, on his examination as a witness, did not recollect distinctly the circumstances attending the sale and the execution of the deed, but the papers evidencing it, signed with his name, were substantiated by him, he acknowledging his signature as his own handwriting. The sale was advertised in the name of Lubukee, and the deed to the purchaser made and signed by him and delivered to the purchaser. And here appellant makes another point, that Lubukee had assigned the notes, and the mortgage, being an incident only, went with the notes to the assignee, and consequently, the power to sell went also to the assignee, and he should have sold.

What are the facts on this point? The notes were never assigned to any one. They were sold and delivered to Eisendrath & Co., and the mortgage assigned by an endorsement upon it. What, then, was the condition of the parties? The mortgage not being an assignable instrument by endorsement, either by the common law or under the statute, the power to sell remained with the mortgagee. *Olds* v. *Cummings*, 31 Ill. 188; and in *Pardee* v. *Lindley*, ib. 174, this court said, where the mortgage gives to the mortgagee or his assigns, power to sell upon default in payment, an assignment of the note secured by the mortgage, will vest the power of sale in the assignee; such power thereby passes from the mortgagee, and can not be executed by him. In this case, the notes were not assigned by the mortgagee, consequently, the power to sell remained with him, and he has executed it in conformity with the deed.

Appellant insists, that at the time of the sale of the property, the defendants, the two Snydackers and Eisendrath, were interested, as partners, in these notes, and in the sale of the property and its avails, and remained so interested, and distributed the spoils among themselves.

The proof shows a contrary state of facts—that Moses Snydacker had no connection with the firm of Eisendrath & Co. until some months after the sale, and as against Eisendrath, we could not say the sale should be now set aside as against him. Lubukee, as mortgagee, had the right to make the sale, and even if Eisendrath had an interest in the purchase by Moses Snydacker, yet, in the absence of any evidence that Lubukee was interested in the purchase and acting collusively, it is by no means apparent why the sale should be set aside. It is not a case of a trustee buying at his own sale. We perceive no evidence of collusion between Lubukee and any of these parties, and nothing in the proof to charge either of them with any fraud, violation of trust, collusion or other act which a court of equity should condemn.

As to the other defendants, they are innocent purchasers for a valuable consideration, without notice of any equities which might have existed in favor of appellant against the original purchaser at the sale. Such purchaser is chargeable with notice of defects and irregularities attending the sale, and can not evade their effect. With remote purchasers, such as Hamlin and the others named, the rule is different. *Cassell* v. *Ross et al.*, 33 Ill. 244; *Reese* v. *Allen, Admr.*, 5 Gilm. 236.

Appellant contends, that these defendants, Hamlin and the others in the same category with him, are bound by the record notice shown by the public records of deeds and mortgages of Cook county, and that by them they knew the irregularity of the sale, the falsity of the advertisement, the inadequacy of the price bid at the sale, and all the other irregularities— not only such as were patent upon the records, but of all such as they might have obtained knowledge upon inquiry.

It is certainly true the record of the mortgage was notice to them, and that informed them only of the facts stated in it. It gave them no information of the kind of notice published for the sale of the mortgaged premises, nor of any irregularities which might have been committed in it, nor that the price paid was inadequate. All those were matters *in pais*, and must be brought home to their knowledge on a proper case made, sustained by proof. These defendants deny all knowledge of any equities existing in appellant, and he has failed to show knowledge. If there was fraud in the mortgagee in selling under the notice he gave, and they not participating in it or knowing of it, it would not be in harmony with the principles of law or equity to declare void the conveyances to them because of the fraud of their vendor. This would be equally illegal and unjust. *Prevo* v. *Walters et al.*, 4 Scam. 35. Even if the mortgagee himself had been the purchaser at the sale, through the aid of a third party to whom he could have conveyed, and then taken the title from him, such title would not be absolutely void, but voidable only, and if immediate steps should not be taken by the *cestui que trust*, the

mortgagor, on his obtaining a knowledge of the sale, to set it aside, a ratification by him would be implied. Such a sale can be set aside only at the option of the *cestui que trust,* and that must be determined in apt time. He has an election to treat the sale as valid if he will. *Scott et al.* v. *Freeland,* 7 Smedes & Mar. 409.

Upon this point, the record shows that when the note became due, and when the sale was made, appellant was in Chicago, and in partnership with W. M. Fuller, his co-mortgagor, and that appellant remained there until February, 1862, when he went to the front with the regiment to which he belonged; that in April, 1862, he returned again to the city, and left the army in 1863, returned to Chicago, where he has ever since remained. He admits, in his testimony, that in 1863 Eisendrath informed him of the sale of the property, and there is proof that he was informed of the sale at the time it took place. The bill was filed at the April term, 1867, and the delay unaccounted for. Four years elapsed after he had knowledge of the sale and proceedings under it, and he remained inactive, giving evidence thereby of acquiescence, and encouragement to purchasers. Valuable buildings have been erected upon the lots, and the region where they are situate, unpeopled when appellant purchased, now teems with a busy population, increasing thereby their value five-fold.

We know of no principle of law or equity which should disturb these purchasers in their titles and possession, nor can we see any equity whatever in appellant's case, as he has presented it.

We concur with the circuit court in the decree dismissing the bill.

*Decree affirmed.*