51   425
130   202

## AMOS S. WATERMAN

### *v.*

## DEWITT SPAULDING *et al.*

1. SALE—*under deed of trust—withdrawing a bid.* Where a party bids at a sale under a deed of trust, under a misapprehension as to the terms of the sale, supposing the amount bid would be received in currency, but

after making the bid the trustee informed him that the purchaser would be required to pay the price in gold at the close of the sale, the bidder may be permitted by the trustee to retract his bid, without thereby affecting the validity of the sale, although upon a further offering of the property it did not bring as much as the amount of the bid withdrawn.

2. TRUSTEE'S SALE—*whether upon credit.*    After a sale by a trustee under a deed of trust which forbid the sale to be made upon credit, the creditor for whose benefit the sale was made, loaned to the purchaser a portion of the money with which to pay the amount of his bid, and this was not regarded as a sale upon credit by the trustee.

3. But *quære,* whether the creditor might not, in such case, properly authorize the trustee to sell upon a credit to the extent of the debt due him, leaving the surplus which would be coming to the debtor to be paid as required by the terms of the trust deed.

4. SAME—*of a sale for more than is due.*    Even if a trustee, under a deed of trust, makes the sale for more than is due to the creditors for whose benefit the security was given, that fact can not affect the title of the purchaser at the sale, but would simply present the question as to the proper distribution of the purchase money.

5. SALES—*inadequacy of price.*    A sale by a trustee under a deed of trust will not be set aside merely for inadequacy of price.

6. WITNESSES—*competency.*    In a suit by a debtor against the heirs of a purchaser at a sale under a deed of trust executed by the debtor, to set aside the sale, it is not competent, under the statute, for the complainant to testify as to admissions of the purchaser made in his life time, concerning an alleged agreement to permit the complainant to redeem.    Such testimony is not admissible against the heirs.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a suit in chancery instituted in the court below by Waterman against Spaulding and others, to set aside a sale under a deed of trust.    Upon the hearing, the circuit court denied the relief sought, and dismissed the bill. Waterman thereupon sued out this writ of error.    The facts are sufficiently set forth in the opinion of the court.

Mr. ARTHUR W. WINDETT and Mr. A. C. STORY, for the plaintiff in error.

Messrs. BLODGETT, UPTON´& WILLIAMS and Mr. B. C. COOK, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in equity, brought by plaintiff in error, in the Lake Circuit Court, against defendants in error, to set aside a sale of real estate made by a trustee under a deed of trust executed by him to secure the payment of a sum of money borrowed through Biddlecomb, of Spaulding. The bill alleges that plaintiff in error was embarrassed, and that liens by judgments, taxes and otherwise, had been obtained on his real estate, and to remove the same the loan was effected and the deed of trust given; that the money was applied directly to payment of debts and removing the liens, and no part of it ever came to the hands of plaintiff in error; that he did not know the amount thus advanced. That Spaulding presented him two notes, amounting in the aggregate to $4,290, which were payable to Spaulding, the large one bearing ten per cent. interest—the smaller one due in one year and the larger one in two years from August 4, 1859—and also a deed of trust on the storehouse and property in controversy, and that he signed and delivered the same without knowing the contents or amount of the same. It charges that it was agreed, at the time the loan was effected, that plaintiff in error should pay fifteen per cent. interest.

It is further alleged, that a sale was made by F. E. Clark, the trustee, for default in payment of the notes after their maturity, on the 4th of January, 1862, under the power contained in the deed of trust; that the property was worth $10,-000, was struck off to Caleb A. Montgomery and Horace S. Berry, for the sum of $4,100; that they were not the highest bidders at the sale; that prior to the sale it was agreed that if Montgomery and Berry should become the bidders and purchasers of the property, they would give plaintiff in error 90 days within which to redeem from their purchase; that he,

within 90 days from the sale, tendered the money to them and they refused to accept the same and permit a redemption ; that no money was paid at the sale, and that it was made on a credit, contrary to the power contained in the deed of trust. Prayer, that the sale be set aside, that plaintiff in error be allowed to redeem, that an account be taken, and for general relief.

Answers were filed, admitting indebtedness of plaintiff in error, the loan, and execution of the deed of trust, but denying that the property was not sold to the highest bidder, or was sold on a credit. They deny all fraud or irregularity in the sale.

It is first urged that the sale was irregular, because Clark bid $4,300, but withdrew it upon being informed that the purchaser would be required to pay the price in gold at the close of the sale. There is no pretence that bank or other paper then used as a circulating medium was, or could be, insisted upon as a legal tender in the payment of debts. The creditor had the right to insist upon the legal tender coin of the country if he chose, for his debt, however harsh it might seem, or however it might depress the price of property, but not the surplus. And when Clark refused to let his bid stand, payable in gold, the trustee no doubt had the right to permit him to withdraw it, and even if he had not, then he is alone responsible for the difference in the sum bid and the price received ; but we have no doubt he could, if the bid was made through misapprehension, as this seems to have been, permit the bidder to retract. And appellant was present and made no objection. He had the right to control all over Spaulding's debt, and he should have directed the trustee to proclaim that he would receive all above that sum in currency, unless he approved the proclamation that gold alone would be received.

We do not see why a bid thus made and withdrawn, should vitiate a sale. After it was withdrawn, the property seems to have been still further offered, but no person would advance on the price previously bid. Clark was notified that if he

purchased and did not pay for it within from fifteen minutes to an hour, the property would be again offered. All that the trustee could do would have been to again offer the property, if the highest bidder had refused to make good his bid, and looked to him for the difference; and we fail to see that the property would have sold for a higher price than it brought, had it been knocked down to Clark, and he had refused to pay, and it had been again offered. We see no evidence that others would have given more.

It is true, that witnesses differ widely in their estimate of the value of the property. Some think it brought a fair price, while others think it was worth more than it brought. But where are the witnesses who say they would have given more than that sum? Property at that time was, no doubt, much lower than at the time the evidence was taken, and all know how difficult it is to discriminate between past and present values.

It is again urged, that the property was sold on a credit. We perceive no evidence in this record that there was any arrangement between the trustee and purchasers, before the sale, by which they were to have time for payment. It is true that, after the sale, when one of the purchasers was endeavoring to effect a loan of a portion of the purchase money, Spaulding offered to loan and did loan it to him. But we fail to find evidence that there was any such agreement before the sale. The fact that the loan was subsequently made does not prove that it had been previously agreed upon by the parties, especially when we see the purchaser endeavoring to borrow it from others. Spaulding could loan it to whom he pleased after it was collected, and why not agree to give the purchaser, after he had purchased at a cash sale, time on a part of the purchase price that was coming to him? And if he chose to do so with those who did purchase, it was because he was willing to give them credit, while he may not have been willing to do so with Clark or others. And if he was willing, after the sale was made, to loan his money to these purcha-

sers, how did it affect the price that was bid? We do not see that it could, or did, in the least depress the price, or in anywise injure plaintiff in error. The trustee swears he sold for cash, and that was what the deed of trust required, and nothing more. While it is clear that he could not sell on credit, when his power forbid it, and had there been a surplus he could not have given time for the payment of the surplus without the assent of plaintiff in error, we are not prepared to hold, had Spaulding authorized him to do so, that he might not have sold on a credit for all or any portion of the debt due to Spaulding.

While it is true that this is a harsh remedy for the foreclosure of the grantor's equity of redemption, still it is of his own creation, and it must be permitted to be enforced. Courts, however, will see that the trustee shall not be allowed to abuse such a trust, any more than any other trustee. He will be held to the discharge of his duty and the exercise of his power in good faith. This case is not like that of *Cassell* v. *Ross*, 33 Ill. 244. There, the trustee sold on credit, and took a note at ten per cent. interest for the debt and surplus. There was no consent of the debtor that the trustee should loan his money for one day, at even ten per cent. interest, thus endangering its ultimate collection and rendering its loss possible. Here was no surplus, and it was the creditor, and not the trustee, who extended the time of payment of his debt, to the purchaser.

It is urged that the sale should be set aside because the property was sacrificed. After a careful examination of the record, we do not see that there was such a sacrifice as calls for relief. The property, no doubt, as is usual in such sales, sold for less than it might have brought had it been sold on time. The property was advertised and offered, and we find no efforts made by the community or by individuals to depress the price or prevent biddings, at the sale. It was open, public, and, so far as we can see, fair, and the property brought $4,100. Had it been worth in cash the price fixed on it by some of the

witnesses, we can hardly believe it would have sold at so low a price. Witnesses introduced on the trial, by plaintiff in error, fix the minimum at $6,000 and its maximum value at $10,000. They vary between these two points. On the part of defendants in error, a larger number of witnesses were called, by whom the highest sum fixed by any of them was $5,000 and the lowest at $3,000. Twelve of these witnesses place its value, at the time it was sold, at $4,000. The number of witnesses who fix it at less than it brought, is greater than those who placed it above that sum.

It will be observed that there is a wide margin in these estimates, and it is owing to the fact that no two persons often agree as to the value of such property, but at last it is but matter of conjecture to a great extent, unless it be brought to the test of a sale. If this property was worth such a sum, it may be asked, why plaintiff in error did not, before the sale, put it upon the market, procure the money, redeem from Spaulding's deed of trust, and save so large a surplus as could have been thus realized. Or, why did not Clark, holding, as he did, a junior mortgage, redeem from Spaulding's deed of trust, and in that manner save his debt?

If the property was of such large value as is contended, and as some of the witnesses suppose, it is incomprehensible to us why a redemption was not made. Why should Clark lose a thousand dollars, when but little effort would have been required to secure it? Or, why should plaintiff stand by and see his property sacrificed and he sustain a loss to the extent of thousands, when, if these witnesses are correct, he had only to offer it in market, realize a sufficient sum to pay Spaulding and secure a large surplus? And yet they both seem to have made no effort, or if they did, it was unavailing, and this, notwithstanding the opinions of witnesses, is strong, if not conclusive, evidence that the property was not sacrificed. We can not set aside such sales merely for inadequacy of price.

We fail to discover any fraud or unfair action on the part of Montgomery or Berry, as purchasers. There is no evidence

that they decried the title, or did any thing to depress the price. They purchased in open market, gave the highest price it would bring, and unless there was some irregularity or departure from the power conferred upon the trustee, they should be protected in their purchase.

It is urged that Biddlecomb gave assurances that plaintiff in error should have 90 days to redeem. Admit this to be true, what right had Biddlecomb to make such an arrangement for the purchasers? It was to them that plaintiff in error should have looked for such an arrangement. There is some evidence that the purchasers did say to plaintiff in error that if he would pay their bid, pay a debt he owed Montgomery, and pay $250, they would permit him to redeem. But as it is the testimony of plaintiff in error, as to admissions of Montgomery, made in his lifetime, they were not admissible, under the statute, against his heirs; and the testimony of Stebbins related to a statement made by Montgomery, after the three months had expired, when he said he had offered to let plaintiff in error redeem the property in 90 days; that he might still have the privilege, as he would rather have the money than the property. Admitting this all to be true, we find no evidence that plaintiff in error offered to comply with these terms, or made any tender within the time, or accepted and acted upon the offer Stebbins swears was made. We are of opinion that the record fails to show that there was any arrangement entered into, before the sale, by which plaintiff had the right to redeem; and if such an arrangement was made afterwards, it was not performed by plaintiff in error, nor was there any tender of performance.

There are objections taken, that the sale was for more than was due on the debt to Spaulding. If this were true, it could not affect the title of the purchasers, but would simply be a question as to the proper distribution of the purchase money. It is urged that there should have been a deduction for rents of the property. When it is remembered that the original amount of the notes was near $200 more than the sum realized

on the sale, and that there had accrued a large sum of interest, we must conclude that the rents were deducted. Again, there is evidence that Spaulding, Biddlecomb and plaintiff in error, looked over the accounts and were understood to have settled. We must conclude that all proper deductions were made; especially so, as we do not find plaintiff in error claiming, immediately after the sale, that he was entitled to any portion of the purchase money. In his circumstances, it is natural to suppose he would have done so if the claim was well founded.

It is also urged, that plaintiff in error was imposed upon and defrauded by Spaulding and Biddlecomb, in the loan of the money, as he did not receive the amount for which the notes were given. Turner testified that several conversations occurred between Spaulding, Biddlecomb and plaintiff in error, relative to this sale and the amount then due, and he understood the amount due Spaulding and Biddlecomb, and the time and manner of the sale, were agreed upon by them. This witness is not, however, very positive in his statement, and says he may have derived his impressions from Spaulding and Biddlecomb. But Truesdell says that a memorandum was made, exhibiting all the claims, which was handed to plaintiff in error. It shows the sum advanced for plaintiff in error, and the account shows three several balances were struck. This memorandum contains charges for repairs, and credits for rents received from the house; and this witness states that this memorandum was handed to plaintiff in error by Biddlecomb.

In it he is charged with the bank stock and money advanced to pay different persons' debts against plaintiff in error. Had this account not been correct, he could certainly, by slight effort, have learned the fact and proved it on the trial. But he failed to do so, and so far as we can see, he kept the memorandum, without finding any fault with its correctness, and endeavors to impose the burthen of proving the consideration of the notes upon the holder. He had averred the want of consideration, and it devolved upon him

28—51ST ILL.

to show that it had not been received. The notes imported a consideration, and must be so held until overcome by sufficient proof. In his efforts to effect a loan for the purpose of re-purchasing from Montgomery and Berry, we do not see that he made any claim that the property was not liable for the sum at which it was sold; nor did he take any steps to restrain a sale because it was not liable for that sum, or even claim or give notice at the sale, at which he was present, that he did not owe what appears to have been due on the notes. From these facts, we are not inclined to think that plaintiff in error has shown himself entitled to have his claims referred to a master for the purpose of having a statement of accounts.

The defendants Spaulding and Biddlecomb, in their answers, allege that they advanced the full amount of the notes in paying the debts of plaintiff in error. Truesdell states that he made a statement of debts owing by plaintiff in error, and of record, amounting, in 1858, to the sum of over $6,000. He also exhibited a list of judgments and interest and costs, against plaintiff in error, due the 1st of January, 1859, amounting, in all, to the sum of $4,156.28. The plaintiff in error does not show that he ever paid any portion of this sum by other means than through this loan, nor that any of them remain unpaid.

Again, Truesdell says the sum that had to be paid was about $3,700, and a list of the debts was made and given to plaintiff in error, and that a sum was put in for insurance, and, as we understand the evidence, $300 was paid to procure the release of dower by the wife of plaintiff in error.

So far as a careful examination of this record discloses the facts, we can see no reason to reverse the decree of the court below, and it must be affirmed.

*Decree affirmed.*