# ROBERT L. WILSON

*v.*

# THE SOUTH PARK COMMISSIONERS.

1. FRAUD—*delivering deed in blank.* The delivery of a deed in blank, by which to obtain money of one not informed of the fact that it is in blank, affords strong evidence that a gross and palpable fraud was intended, which will make all the parties to the fraud liable in an action for the damages resulting.

2. CRIMINAL LAW—*filling blanks in deed without a power of attorney.* The filling up of the blanks in a deed signed by the grantor, with the name of a grantee, and a description of land, without authority, is a criminal act, and makes the party so offending liable to a prosecution for forgery.

3. DEED—*if blanks are filled without authority, it will be void.* If a deed has no description of any land or the name of any grantee, but is in blank, except the names of the grantors, and the blanks are afterwards filled so as to show a grantee and a description of land, without authority, it will be void.

4. WITNESS — *credibility.* Where an officer, who has certified to the acknowledgment of a deed by husband and wife in proper form, testifies that the wife was not present, and did not acknowledge the same, his testimony will be entitled to but little weight against his certificate.

5. DEED OF TRUST—*conveyance by trustee passes legal title without regard to notice of sale.* A conveyance of land by a trustee, with, or even without notice, as required in the deed of trust, will pass the legal title to his grantee, and, until a redemption is had, he will hold it, and may set it up in defense of an action of ejectment.

6. SAME—*innocent purchaser may rely on recitals in trustee's deed as to notice of sale.* Where land sold by a trustee under a deed of trust has passed into the hands of an innocent purchaser, and the trustee's deed recites a compliance with all the requirements of the trust deed, as to the giving of notice, etc., such purchaser is not bound to go behind the deed to learn whether its recitals are true or not. The remote purchaser, to be affected, must be chargeable with notice of a defect in the execution of the power.

7. LIMITATION—*under act of* 1839. Where land is sold under a deed of trust, and the grantee and those succeeding to his claim and color of title pay all taxes thereon for seven successive years, while the land is vacant and unoccupied, and then take possession, this will present a complete bar to an action of ejectment by the grantor in the trust deed, under the Limitation Act of 1839.

8. EVIDENCE—*secondary—when duplicate must be produced.* If, from the nature of the case, it is manifest that a more satisfactory kind of secondary evidence exists, the party will be required to produce it; otherwise, the objector must not only prove its existence, but, also, that it was known to the other party in time to have been produced at the trial.

9. Thus, where an original tax receipt was destroyed, and the fact of there having been a duplicate receipt sent to a distant place, appeared on the trial, but there was no proof that the party seeking to prove payment of taxes had any prior notice of its existence, it was *held*, that parol evidence was properly received.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. MILLER & FROST, for the appellant.

Messrs. AYER & KALES, and Mr. J. V. LE MOYNE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant brought ejectment, for the recovery of forty acres of land, situated in Cook county, being the west half of the east half of the north-west quarter of section 15, township 38 north, range 14 east of the third principal meridian. On the trial below, he introduced what was treated by the parties as evidence of title in fee. Whereupon, the defendant below introduced evidence of a trust deed executed by appellant to one James Otis, dated December 24, 1857, which was duly recorded on the 29th of the same month, which was given to secure appellant's promissory note, of the same date, for $1500, payable in six months, with ten per cent interest. The deed contained a power to sell, on default of payment, at auction, to the highest bidder, for cash, after having advertised the sale for ten days in a newspaper published in the city of Chicago, and to execute and deliver a deed to the purchaser; also, evidence of a sale by Otis, the trustee, to one Fletcher, dated on the 14th of April, 1859. The deed from the trustee contained a recital that all of the requisites imposed by the trust deed had been complied with in

making the sale, after a default in payment of the note. To overcome this evidence, appellant introduced himself as a witness, and testified that the trust deed, when acknowledged and delivered by him to Wheeler, to be delivered to the person who might loan the money, was a printed blank, having neither grantee's name, a description of the land, the consideration, nor, in fact, anything written therein but the name of himself and his wife. In his statement, he is corroborated by Wheeler, Schenk and Coblentz. On the other side, James Otis and L. B. Otis swear unequivocally that the blank was filled up complete by James before it was executed, and sent back to Sterling for the purpose, and came back signed and acknowledged, before the money was loaned or the deed received. They both testify that Wheeler first presented a deed signed in blank, which they positively refused to receive. Waughop swears he had occasion to examine the original deed, and that it was in the handwriting of James Otis.

From this evidence, we are inclined strongly to believe that the deed was filled up and complete when it was delivered. That it should have been, would only be according to the almost uniform course of business; and to have been delivered in blank, would be strong evidence that a gross and palpable fraud was intended by the parties, which would have rendered each and all of the parties liable to a suit for any and all damages resulting from the fraud; and we can hardly suppose that all the persons engaged in this transaction, saying nothing of common honesty, would be so reckless of their interest as to incur such a liability to the defrauded purchaser, as to execute, deliver and act under such an instrument. Again, we could not expect any but the most reckless, if not depraved, to fill up such blanks in the deed without a power of attorney, thus incurring the hazard of a prosecution for forgery. L. B. Otis was a lawyer of experience, and had for several years been a circuit judge in a sister State, and it is not reasonable to suppose that he would

have been so ignorant as not to know that it was criminal, without authority, to fill the blanks in the deed. Even if appellant had verbally authorized Wheeler to fill the blanks, still Judge Otis must have known the power would be insufficient, and would render the deed void, and in case of a criminal prosecution, he would, in all probability, have found it difficult to prove the verbal authority.

Again, L. B. Otis testifies that he received a letter, purporting to have been written by appellant, and postmarked at Sterling, asking for an extension of time for payment, and on the payment of six months' interest by Wheeler & Co., the time was extended. As to such a letter, appellant swears he has no recollection of having written it.

We can hardly suppose that intelligent business men would transact business so recklessly, especially after being informed by Otis that a deed thus altered would be void. There must have been two deeds presented, and these witnesses must have had the first in their mind when they testified; and as to the evidence of Coblentz, we do not think it entitled to any great weight, as he swears that he took the acknowledgment to the blank, and that Mrs. Wilson was not present, nor did she acknowledge the deed. Such recklessness and official delinquency must greatly impair the value of the evidence of such a witness. If so reckless in the discharge of his official duties, he may be, and possibly is, so in his testimony. When he certified that Mrs. Wilson was present, and that he examined her to ascertain whether the execution of the deed was voluntary or not on her part, according to his testimony he certified to what was palpably false. This greatly impairs his credit as a witness. The evidence, considered in the light of surrounding circumstances, was, we think, sufficient to warrant the jury in finding the deed was complete when delivered.

If the deed was complete when it was acknowledged, and we think the evidence clearly preponderates in its favor, then it becomes immaterial to consider the question as to

4—70TH ILL.

whether there was a failure to comply strictly with the requirements of the deed in advertising the property for sale.

If the deed was complete, then the legal title passed from appellant to James Otis, and his conveyance, with, or even without, notice, would pass the legal title to his grantee, Fletcher, and, until a redemption should be had, he would hold it, and could set it up in an ejectment, as in that action none but the legal title can be tried or regarded. Equities are not tried in such an action, and, as against appellant, Fletcher or his grantees could set it up as a complete bar to a recovery. This is elementary, and requires the citation of no authority in its support.

But there is another consideration, in reference to a sale where all of the requirements in the deed have not been complied with, by the trustee, in making the sale. In this case, there are innocent purchasers, and where there are such, and the deed executed by the trustee recites a compliance with all such requirements, they are not bound to go behind the deed to ascertain whether or not the recitals are true. This rule is announced in the cases of *Reese* v. *Allen*, 5 Gilm. 236; *Cassell* v. *Ross*, 33 Ill. 244; *Hamilton* v. *Lubukee*, 51 Ill. 415. In such a case, the remote purchaser, to be affected, must be chargeable with notice. In such cases, the person executing the trust deed, selects his trustee, and usually conveys to a person in whom he reposes confidence, both as to his integrity and business capacity, and having reposed the confidence and conferred the power on him to act, if it is abused, he must be held responsible for the improper selection. Even where he authorizes the assignee to execute the power, he must be equally responsible, as he confers the power, and if improvidently done, the innocent must not suffer for his want of prudence, unless they can be charged with notice of the abuse of the power. It would be highly inequitable and unjust to hold otherwise, and would lead to ruinous sacrifice of the trust property, as none but the speculator would purchase, and he at low rates, if the remote purchasers, at

every step in the chain of title, were compelled to collect and preserve the evidence of the regularity of the trustee's sale.

It is, however, said that appellees have not shown that they occupy the relation of *bona fide* purchasers, by showing the payment of the purchase money. This, manifestly, is a mistake of fact, as the evidence shows that the park commissioners have paid the condemnation money; so that under the strictest rules that can be applied, appellees have shown themselves to have been *bona fide* purchasers, and there is nothing in the record to charge them with notice. This finding of the jury on the question of the filling up of the deed before its delivery, is conclusive of the case.

In addition to all this, the evidence shows a complete bar under the Limitation Act of 1839. Fletcher and his grantees undeniably held claim and color of title, and there can be no question of their good faith in the title. They paid all taxes legally assessed on the land for the period of full seven years, whilst the land was vacant and unoccupied, which was followed by possession under the claim and color of title, before the commencement of this suit. That the taxes were so paid whilst the land was vacant and unoccupied, the evidence scarcely leaves room for a doubt. It is so full, clear and satisfactory to our minds, that we can not conceive that a court could have permitted a different verdict to stand. . It is said that one five acres of this tract was sold for a drainage tax; but the evidence is clear and convincing that no portion of this tract was thus sold, but it was another quarter, and that the taxes on this were, in fact, paid for that year.

It is urged that the duplicate tax receipts, sent by the agent to Vermont, should have been produced, as the originals had been destroyed by fire. There is no evidence that such duplicates are in existence, as no witness states they are, but only that they once existed and were sent to the owner. But even if they are, the parties to this suit had no knowledge of the fact until spoken of by the witness on the trial. Greenleaf, in his work on Evidence, (12 ed. sec. 84, and notes,)

lays down the rule: " That if, from the nature of the case itself, it is manifest that a more satisfactory kind of secondary evidence exists, the party will be required to produce it; but that, where the nature of the case does not of itself disclose the existence of such better evidence, the objector must not only prove its existence, but also must prove that it was known to the other party in season to have been produced at the trial." It is unusual for persons paying taxes to take duplicate receipts, and, so far as this record discloses, appellee did not know that such were taken, or that there was reason to believe that any such existed. Nor do we find anything in the record which was calculated to put appellee upon inquiry for such duplicates, and hence, the parol evidence was properly admitted. Although the verdict is sustainable on the other grounds discussed, the bar of the statute is conclusive of all other questions. That terminates all such questions, and ends the controversy.

The judgment of the court below is affirmed.

*Judgment affirmed.*