## DELIA A. FAIRMAN

*v.*

## FERDINAND W. PECK *et al.*

1. TRUSTEE'S SALE—*notice of sale, in respect to amount of debt.* Where no statement of the amount of the indebtedness is required in the notice of sale, under a power in a deed of trust, a sale will not be set aside for an over-statement of the amount due in the notice, unless it is fraudulently done, and, it seems, not then if the property has passed into the hands of innocent purchasers.

2. SAME—*prior incumbrance as ground for avoiding sale.* Where land is conveyed by warranty deed, and a deed of trust given to secure the unpaid purchase money, the existence of a prior incumbrance on the property is no ground for setting aside a sale under the trust deed, especially where no injury is shown to have resulted in consequence, and the property sells for its full value.

3. SAME—*sale en masse.* It is only on the ground of fraud, or that some one has been prejudiced by the sale of several tracts of land *en masse,* that the sale will be set aside in a court of equity because not sold in parcels. If first offered in parcels, without bidders, it may then be sold together.

4. SAME—*setting aside as against innocent purchaser.* A trustee's sale of real estate will not be set aside as against innocent, remote purchasers without notice, for mere errors and irregularities.

5. NOTICE—*from record of deeds.* The record of a prior incumbrance, at the time of a sale under a deed of trust, may be notice of the continuance and existence of such incumbrance, but is not any notice that the power of sale might not be properly exercised when made.

6. The record of a trustee's deed, showing the sale of lots together, may be notice that the sale was *en masse,* but is not notice that such sale was unjustifiable, or that the property was not first offered separately.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This was a bill in chancery, to have set aside a trustee's sale made under a trust deed, and to be allowed to redeem.

The following facts appear: In October, 1856, Harry A. Fairman purchased from Augustus G. Downs and Francis P. Van Wyck, for the consideration of $6000, the premises described in the bill of complaint, being three lots on the north-east corner of Wabash avenue and Twenty-third street, Chicago, each fronting 40 feet on the avenue, and being 160 feet in depth. Fairman paid $1050 of the purchase money in cash, and for the balance gave his three promissory notes to Downs and Van Wyck, for $1650 each, payable, respectively, in one, two and three years after date, with interest at six per cent per annum. The premises were conveyed to Fairman by a warranty deed, executed by Downs and Van Wyck, and the deferred payments of the purchase money were secured by a trust deed of the property from Fairman to Joseph N. Barker. containing a power of sale in case of default of payment, etc. In both the conveyances the premises appear to have been described by metes and bounds, but they had been previously sub-divided into three lots, and the plat of the sub-division placed on record. The deeds and notes were dated October 11, 1856.

On the 13th of June, 1857, Fairman died intestate, leaving him surviving, his widow, and appellant, his child, then not quite one year old, his only heirs at law. Mrs. Fairman was appointed administratrix of the estate by the county court of Cook county. The first note and $500 on the second were paid by Mrs. Fairman. No further payments being made, Barker, the trustee, on the 19th of March, 1860, published a notice of sale in the Chicago *Democrat*, reciting the execution of the trust deed, that it was given "to secure the payment of three certain promissory notes therein mentioned;" that "default had been made in the payment of said notes," and that application for a sale had been made "by the legal holder of said notes;" and stating that, on the 18th of April, 1860, he would sell, at public auction, "the premises conveyed by said

deed of trust," describing them by metes and bounds. The trustee's sale was had pursuant to the notice, and the three lots were then sold, as a whole, to Downs and Van Wyck, for $3475, the unpaid amount of the notes, they then being the holders of the unpaid notes. A trustee's deed was accordingly executed by Barker, conveying the premises to Downs and Van Wyck, and reciting the trust deed; that default had been made in the payment of the three promissory notes; that the premises were duly advertised for public sale on the 18th of April, 1860, and that, in pursuance of the notice, the premises, on the day and year last mentioned, were sold at public sale, and that Downs and Van Wyck were the highest bidders.

At the time of Fairman's purchase, there was a trust deed, from A. D. Rich to Paul Cornell, securing the payment of a note for $400, existing as a prior incumbrance on the title to the south 80 feet of the premises, being the south two of the lots. The debt secured by this trust deed was paid some time after the trustee's sale by Downs and Van Wyck.

Since the trustee's sale, the title conveyed by the trustee has passed through quite a number of innocent holders, and is now vested in appellees Peck, Botsford, Bassett and Myers —appellees Baird and the United States Mortgage Company being mortgagees of a part. The premises have, since the sale, greatly increased in value, and have been covered with expensive residences, their present value being considered as not less than $50,000.

This bill to set aside the trustee's sale, and be allowed to redeem, on the ground of alleged fraud and irregularities in the trustee's sale, was exhibited by Delia A. Fairman, as the heir at law of Harry A. Fairman, deceased, on the 22d day of February, 1877, nearly seventeen years after the time of the sale, and two years and eight months after the complainant came of age, she becoming eighteen years of age on the 14th of June, 1874.

The court below, upon hearing, dismissed the bill, and the complainant appealed.

Messrs. BANNING & BANNING, for the appellant.

Mr. J. V. LE MOYNE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

There are three grounds upon which the trustee's sale is claimed by appellant to be irregular and void: 1. Because the amount of the secured indebtedness was greatly over-stated in the notice of sale. 2. Because Downs and Van Wyck having warranted the title, the trustee had no right or power to make a sale of the premises during the existence of the incumbrance created by the Rich trust deed. 3. Because the premises were advertised for sale, and sold as a whole, and not in separate lots or parcels.

It requires a very close criticism of language to discover that there was any over-statement of the indebtedness in the notice of sale. It did not profess to state the amount of the indebtedness then due, but to state that the contingency had happened upon which the power of sale might be exercised, viz: default in the payment of the notes. There had been default in the payment of the notes, as they had not been paid. The statement did not necessarily imply that no one, or no part, of the notes had been paid.

Perry, in his work on Trusts, in speaking upon this particular question, observes: "If such statement (of the amount of the claim or debt) in the notice is required by the power or by a statute, the amount of the debt must be stated with sub-stantial accuracy; or, if not being required, a greatly exagger-ated claim should be fraudulently stated in the notice, the sale would not bar the equity of redemption. So, if the sale is proposed to be made for more than is due to the creditor, equity will restrain the sale; and if actually made, it will be set aside." 2 Perry on Trusts, sec. 602 s. No one of such circumstances exists in the present case, to bring it within the range of that rule.

No statement in the notice of the amount of the indebtedness

was required by the power or by statute at that time.   An act passed since, (Rev. Stat. 1874, p. 713,) declares that it shall be sufficient to insert in the notice "the amount of indebtedness the instrument was given to secure, the amount claimed to be due," etc.   No greatly exaggerated claim was fraudulently stated in the notice, nor was the sale proposed to be made, or actually made, for more than was due.

In the case of *Shine* v. *Hill*, 23 Iowa, 268, the objection to a trustee's notice of sale was similar to the one made here. It was objected that the trustee's sale was void, because the notice of sale stated "the whole amount mentioned in the trust deed, etc., was unpaid," which was not true: it was held, that the objection was not available to set aside the sale of the property in the hands of the grantee of the purchaser.

This court passed upon this question in *Hamilton* v. *Lubukee*, 51 Ill. 415, where, upon the subject of an over-statement, in the notice of sale, of the amount of the debt, it was said: "The first point made by appellant is, that the advertisement, or notice, of the sale describes a different and other or larger indebtedness than that secured by the mortgage, to-wit: an indebtedness of $1000 over and above the amount really due by the mortgage.   Admit the fact to be so, it is not shown that the property was injuriously affected by it, or bidders deterred thereby from attending the sale; nor is it shown that it was so published for a fraudulent purpose,—and if it was, there is no evidence the defendants, or any of them, participated in it, or had any knowledge of it."

All which may be affirmed respecting the case in hand; and to the like effect is *Bush* v. *Sherman*, 80 Ill. 175.   There was no attempt on the part of appellant to prove that the property did not sell for its full value.   The only proof upon that subject was made by the defendants, in the testimony of Van Wyck, who was at the sale and bought the property, and who says: "The amount we bid for the property was its full value; it was then unimproved."   He states, further, that, about two years after the trustee's sale, he succeeded in selling

the property; that he saw Mrs. Fairman, and told her he would figure up how much they had made in the transaction, which he did, showing it to be only $300, which he paid over to her.

As respects the second ground, the existence of the prior incumbrance of $400, created by the Rich trust deed, quite a number of authorities have been cited by appellant's counsel, to the purport that, in a suit to foreclose a purchase money mortgage, the mortgagor and grantee in the conveyance can claim deductions for incumbrances covenanted against in the deed from the mortgagee. However this may be, or however it might have been on an application to enjoin the sale under the trust deed until this incumbrance was removed, we view it as a different question, whether, when a sale has actually taken place where there is such an outstanding incumbrance existing, the sale should be set aside for such a reason, and especially where, as in this case, no injury is shown to have resulted. The only suggestion of harm in this regard is, that the incumbrance would necessarily prejudice the sale, as no one would bid as much, taking the premises subject to a prior trust deed, as if receiving a clear title; but the proof is, that the property did bring its full value. If so, if the amount of the full value of the property was actually bid and paid for it, how could there be injury in the respect named? When such a sale has once been made, it should not be set aside by a court of equity without some sufficient equitable reason being shown. None such appears here in this respect, as, for aught that is shown, there might have been an adequate remedy upon the covenants in the deed to Fairman.

In *Abbott* v. *Allen*, 2 Johns. Ch. 519, Chancellor KENT, in considering the subject generally, and laying down the rule that a purchaser should resort to his covenants, remarked: "Perhaps an outstanding incumbrance may form an exception in cases of covenants against incumbrance." It does not appear that there was, here, any covenant against incumbrances. The deed from Downs and Van Wyck to Fairman was not

produced, and only an abstract of title was shown—the deeds and the records of Cook county having been destroyed by the great fire in Chicago, in 1871. The abstract merely shows the deed to be a warranty deed. Had the testimony of Van Wyck been received, it would have shown an assumption of this incumbrance by Fairman; but his evidence in this respect was excluded by the court below, and, we think, rightly, under the statute. There is no claim that Fairman did not have full notice of this incumbrance when he purchased.

In *Campbell* v. *Benjamin,* 69 Ill. 251, it was said upon this subject: "It would be a novelty in the purchase of real estate incumbered by a heavy mortgage, unheard of, to pretend that no agreement was made between the vendor and vendee in regard to who should assume and pay the incumbrance." · The trust deed, here, having expressly authorized the sale to be made on the condition, alone, of default in the payment of the notes, and not providing anything in respect to this incumbrance, may it not be presumed that upon such default of payment the power of sale was rightly exercised as intended by the parties, and that it was agreeable with their understanding, whatever it may have been, with respect to such incumbrance, that, notwithstanding its existence, such sale might be had, or that Fairman relied upon his covenants in his deed from Downs and Van Wyck, and, at least, might not innocent subsequent purchasers well so presume? At any rate, the power of sale was given, and exercised as given, and the sale can not be held void.

As to the sale of the lots as a whole, and not separately, they were thus sold according to the description in the trust deed, and in the deed to Fairman. Barker, the trustee, testifies that he knew the land was subdivided into lots, and that he offered it in lots; that there being no bidders, he then offered it as a whole. There was no other testimony upon this point. In *Van Valkenburg* v. *Trustees, etc.* 66 Ill. 105, it was held, that where the premises were offered separately and no bidders, and then struck off *en masse,* the sale was

properly confirmed; and to the like effect is *Martin* v. *Hargardine*, 46 Ill. 322. In *Prather* v. *Hill*, 36 Ill. 404, it was said: "This court has held that it is only on the ground of fraud or that some one has been prejudiced by the sale of lands *en masse*, that the sale will be set aside in equity because the property was not sold in separate parcels," citing *Ross* v. *Mead*, 5 Gilm. 173; *Gillespie* v. *Smith*, 29 Ill. 481. And to like effect see *Fergus* v. *Woodworth*, 44 Ill. 378; *Hay* v. *Baugh*, 77 id. 500.

As before remarked, the proof here shows the property was sold for its full value; hence no injury resulted from the manner of the sale.

There is the allegation of fraud in making the sale, but it is entirely unsupported by proof, there being nothing more claimed in that respect than the inference of fraud to be drawn from the circumstances stated, in the making of the sale.

Were the case one against Downs and Van Wyck themselves, the purchasers at the sale, they having retained the title in their own hands, it is by no means clear that the grounds would be sufficient for setting aside the sale even as against them; but as against the appellees, remote and innocent purchasers, they must clearly be adjudged insufficient. The alleged irregularities would not make the sale void, but at the most only voidable. Such a sale, upon application in due time, may be avoided while the title remains with the purchaser at the sale, or his grantee, with notice; but after the property has passed into the hands of subsequent *bona fide* purchasers for value, without notice of the irregularity in the sale, as against them, the right of avoidance of the sale can not be exercised, but the sale must stand. *Wilson* v. *Park Commissioners*, 70 Ill. 46; *Cassell* v. *Ross*, 33 id. 244; *Conover* v. *Musgrave*, 68 id. 58; *Gunnell* v. *Cockerill*, 79 id. 79; *Mixer* v. *Sibley*, 53 id. 61; *Shine* v. *Hill*, *supra*.

It is said there was notice here. None other is pretended than such as might be furnished by the public records. There would appear upon the record the prior trust deed made by Rich, and the warranty deed from Downs and Van Wyck to

Fairman, and perhaps that should be considered notice of the continuance and existence of the incumbrance of such trust deed at the time of the trustee's sale; but we can not regard knowledge of the existence of such deeds as any notice that the power of sale might not be properly exercised at the time it was, or as anything to put one upon inquiry in that regard. We think, rather, that from the fact of the power of sale having been given unqualifiedly, as respected the incumbrance, third persons would have the right to suppose that the power might unobjectionably be exercised as it had been given, and was exercised, notwithstanding such incumbrance and warranty deed. The record of the trustee's deed, too, should probably be considered as furnishing notice that the property was sold as a whole, but it would not show whether or not it was so sold under justifiable circumstances, as, that it had first been offered separately, etc. No injury having resulted from the manner of the sale of the property, that should not, as we have seen, invalidate the sale. Further than as above, we do not regard the public records as furnishing anything more in the way of notice.

So far as respects anything of material bearing, we are of opinion that appellees occupy the position of innocent purchasers, and that they are fully entitled to protection as such.

The view taken renders it unnecessary to consider the question of *laches*, which has been made.

The decree must be affirmed.

                                        *Decree affirmed.*