ROBERT E. JENKINS, Assignee,

*v.*

LUTHER H. PIERCE *et al.*

*Filed at Ottawa May 14, 1881.*

1. BANKRUPTCY—*rights of assignee.* The assignee of a bankrupt, on bill to set aside a sale of the bankrupt's real property, made under a deed of trust, and for leave to redeem, has no greater rights than the bankrupt would have were he the party, and any defence available against the bankrupt will be good against the assignee.

2. DEED OF TRUST—*of the advertisement for sale.* Where a deed of trust or mortgage contains a power of sale on default of payment, upon giving notice of the time and place of sale, "thirty days before the day of sale," only one publication of the notice will be necessary.

3. SAME—*notice of sale need not state amount due.* Where a deed of trust does not require the notice of sale to state the amount due and for which the property is to be sold, a failure to give such amount in the notice, in the absence of evidence of fraud, furnishes no ground for setting aside the sale.

4. SAME—*inadequacy of price.* The mere inadequacy of the price bid for property at a sale under a power in a mortgage or deed of trust, which is not so gross as to raise the presumption of fraud, will not justify the court in setting the sale aside.

5. SALE—*by one not the trustee, and for benefit of trustee.* The sale of property under a power in a deed of trust, in the absence of the trustee who is authorized to sell, and by a third person, to a person who does not buy in

good faith for the purpose of acquiring the title, but in fact for the benefit of the trustee, is not absolutely void, but voidable only, and the owner having knowledge of the facts has the election to abide by the sale or to disaffirm it.

6. SAME—*election to avoid, must be exercised in reasonable time.* A person having the right of election to abide by a sale of his property or disaffirm the same, must exercise his option within a reasonable time, and before innocent third parties have invested money or labor upon the faith of its validity; and if he shall not do so, he will be barred from setting it aside.

7. SAME—*election to affirm.* Where the former owner of property sold under a deed of trust, with full knowledge that the sale was not made by the trustee to whom the power of sale was given, and that it was bid off by one not for himself, but for the benefit of the trustee, makes an agreement with the purchaser and agents of the trustee for time in which to procure a purchaser of the property, such arrangement is of itself an election to treat the sale as valid.

8. PURCHASER—*when protected from irregularities.* A purchaser of land who has no notice of any irregularities in the proceedings by which his vendor acquired title, will be protected against the same.

9. Where real estate was sold under a deed of trust, and the proceedings were such that the former owner might have had the sale set aside in equity, and he, with full knowledge of the irregularities of the sale, stands by and sees the purchaser sell to a third party without notice, and interposes no claim or objection, and allows such third person to pay out his money for the property and make large expenditures in improvements, such second purchaser will be protected against the former owner.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. W. T. BURGESS, for the appellant:

The sale under the Prather mortgage, made on the 24th of June, 1874, did not bar the equity of redemption from the mortgage, because the property was bid in in the name of John W. Matthews, for Prather, the mortgagee, without the payment of any consideration whatever, or the agreement or expectation of paying any.

Under the testimony, there is and can be no question about this state of facts. The right of redemption is, therefore, undisputed, unless the defence can avail themselves of some matter of avoidance. *Mapps* v. *Sharpe*, 32 Ill. 13; *Hall* v.

*Towne,* 45 id. 493; *Waite* v. *Dennison,* 51 id. 319; *Griffin* v. *Marine Co.* 52 id. 130.

The other objections to this sale, upon which it should be vacated and set aside, are—

(*a*) That it was advertised but once.

(*b*) That in the advertisement the whole note was claimed to be due. It is for $25,000, with interest to day of sale, $7,500, in all about $32,500, while the attorneys advertising it had in their hands the evidence that there was but $5,354.93, and interest from January 9, 1874, due.

(*c*) The sale made in the absence of Prather by Pratt, as his agent.

(*d*) The uncertainty from the deed whether the blocks were sold *en masse,* or separately, one after the other.

(*e*) The sale was for a grossly inadequate price.

Mr. FREDERICK ULLMAN, for the appellees Pierce and Cooper:

Jenkins, as Walker's assignee, is a volunteer, standing in Walker's shoes, and having no other or greater rights than he. *Yeatman* v. *Savings Institution,* 95 U S. 766; *Hardin* v. *Osborne,* 94 id. 571.

There is nothing in the case which, under the well settled rules of equity, can let Walker in to redeem. The objections to the sale are:

(*a*) That it was advertised but once. The mortgage provides that the mortgagee may sell after publishing a notice in a newspaper printed in the city of Chicago, thirty days before the day of sale. Under the language of the mortgage one publication was sufficient. *Weld* v. *Rees,* 48 Ill. 428.

(*b*) That in the advertisement the whole note was claimed to be due.

This is no statement that the full amount was due, but if it was, it would be no objection to the notice. See *Bush* v. *Sherman,* 80 Ill. 168; *Fairman* v. *Peck,* 87 id. 156.

(c)  That the sale was made by Prather's attorney, in Prather's absence.

The utmost effect of such an irregularity would be to render the sale voidable, if Walker had acted in apt time. It did not render the sale void. *Mulvey* v. *Gibbons,* 87 Ill. 367; *Munn* v. *Burges,* 70 id. 606; *McHany* v. *Schenk,* 88 id. 357; *Higgins* v. *Curtis,* 82 id. 28.

(d)  The uncertainty from the deed whether the blocks were sold *en masse* or separately.

*First*—There is no uncertainty. The language is: "he severally offered for sale at public auction, to highest bidder, for cash, the said premises, and Matthews * * * having bid for said several tracts of land, severally, the sum of $1000 each," was declared the purchaser.

*Second*—A sale *en masse* does not render the sale void, but only voidable, if proceedings are taken in apt time. See *Williams* v. *Rhodes,* 81 Ill. 571; *Fairman* v. *Peck,* 87 id. 156.

(e)  That the sale was for an inadequate price. That this alone will not invalidate a sale, is too elementary to need support from authority.

These objections, with the further one that the property was bid in by Matthews for Prather, are the only objections made to the foreclosure.

The sale, at the very utmost, being merely voidable, it was certainly competent for Walker to acquiesce in it, and ratify it. This, it is clearly established, he did, so that we repeat, that even as between the immediate parties he could not afterwards question it. *Bush* v. *Sherman,* 80 Ill. 160.

Walker contracted to purchase the property, after the sale, with full knowledge of the facts. This new arrangement was an abandonment and waiver of any right to redeem which he might have had. *Rogers* v. *Huggins,* 57 Ill. 244.

Four years' delay has frequently been held by this court to bar the right of redemption. See *Hamilton* v. *Lubukee,* 51 Ill. 415; *Bush* v. *Sherman, supra; McHany* v. *Schenk,* 88 Ill. 357.

The right to question the sale for irregularities, is personal to the mortgagor, and his grantee can not raise the question. *McHany* v. *Schenk, supra.*

Mr. RANDALL H. WHITE, for the appellees the Northwestern Leather Company and Joseph McGlauchlin :

The foreclosure sale was voidable only, for irregularities, at the option of Walker, to be exercised in apt time. *Mulvey* v. *Gibbons et al.* 87 Ill. 377 ; *Kenyon* v. *Schreck,* 52 id. 383 ; *Munn* v. *Burges,* 70 id. 604 ; *Higgins* v. *Curtis,* 82 id. 28.

If a party, with knowledge that he has been defrauded, confirms the original contract by making new agreements respecting it, he thereby waives the fraud and abandons his claim to equitable relief. *Rogers* v. *Huggins et al.* 57 Ill. 244; *Edwards* v. *Roberts,* 7 Sm. and M. 544; *Parsons* v. *Hughes,* 9 Paige, 591; *Musson* v. *Bovet,* 1 Denio, 74.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 11th of February, 1869, Henry H. Walker made his promissory note, bearing that date, and thereby promised to pay to his own order, on the 25th of May, 1871, the sum of $25,000, with interest at six per cent per annum.   At the same time he made his mortgage on blocks 3, 100, 107 and 111, in Canalport, in Cook county, in the form of a deed of trust, to Abraham S. Prather, with power to him to sell in case of default, to secure the payment of the note.   He then indorsed the note in blank, and delivered it, together with the mortgage, to Samuel J. Walker.   Samuel J. Walker then indorsed the note, with a guaranty of payment, and delivered the note and mortgage to Prather, in consideration of a prior indebtedness.   The mortgage was foreclosed by a sale of the property on the 25th of June, 1874, to John W. Matthews, and a deed was made by Prather to him, pursuant to the terms of the power in the mortgage.   On the 6th of March, 1875, Matthews conveyed the property to Albert Cooper.

On the 1st of January, 1877, Cooper conveyed block 107 to Robert Mariner, and on the 27th of April next following he conveyed block 100 to Joseph McGlauchlin, and on the same day Mariner conveyed block 107 to McGlauchlin. On the 1st of June, 1877, McGlauchlin conveyed both blocks (100 and 107) to the Northwestern Leather Company.

On the 2d of November, 1871, Henry H. Walker conveyed the property embraced in the Prather mortgage, subject to that mortgage, to Samuel J. Walker, who subsequently made a mortgage, in the nature of a trust deed, with power of sale, to Samuel M. Moore, to secure an indebtedness to George and William Wiltshire. After the foreclosure of the Prather mortgage, Moore sold the property in his mortgage to George Wiltshire. On the 21st of January, 1878, George Wiltshire filed his bill in equity in the court below against Cooper and the Northwestern Leather Company, to redeem from the sale under the Prather mortgage.

Samuel J. Walker went into bankruptcy in April, 1878, and Robert E. Jenkins was appointed his assignee. On the 8th of November, 1879, Jenkins, as such assignee, obtained leave to answer, and also filed his cross-bill, praying to be allowed to redeem from the Prather mortgage.

On the hearing in the court below, no evidence was introduced by Wiltshire, and his bill was dismissed. The controversy there was between Jenkins, as assignee of Samuel J. Walker, on the one side, and Cooper and the Northwestern Leather Company on the other. The court decreed that the cross-bill be dismissed, and Jenkins appeals to this court.

The questions to be considered alone affect Jenkins, as assignee. Whether others might have rights in this property, if they were properly before us endeavoring to assert them, we shall not inquire. And, for the purposes of the questions here to be passed upon, Jenkins stands in the shoes of Samuel J. Walker, having no greater rights than he would have were he, himself, the party. *Hardin* v. *Osborne*, 94 Ill. 576; *Yeatman* v. *Savings Institution*, 95 U. S. (5 Otto,) 764.

Waiving the question whether it appears that Samuel J. Walker had any interest in this property which would authorize his assignee to file a bill to redeem, we are of opinion that, on the merits of the case, the cross-bill was properly dismissed.

The objections urged against the sale under the Prather mortgage are, that the property was advertised but once; that in the advertisement the whole note was, improperly, claimed to be due; the sale was made in the absence of Prather; the property was sold *en masse;* the sale was for a grossly inadequate price; and that the property was bid off in the name of John W. Matthews, for Prather, the mortgagee, without the payment of any consideration whatever, or the agreement to pay any.

The mortgage provides, that in default of payment, Prather, " his heirs, executors, administrators or assigns, after publishing a notice in a newspaper printed in the city of Chicago, thirty days before the day of sale, may sell the said premises," etc.

The notice was published in a newspaper printed in the city of Chicago, more than thirty days before the day of sale, and as to this there is no controversy. It was held in *Weld* v. *Rees,* 48 Ill. 428, that under a power containing identically the same language, but one publication was necessary. The notice published was, therefore, sufficient.

The objection that the notice claimed the whole note to be due, is not sustained by the record. The notice simply recites, "and whereas, default was made in the payment of said note, and interest thereon, when the same became due and payable," etc. No attempt is made to give the amount due, and there is no requirement in the power that the notice shall state the amount due, and for the non-payment of which the property is to be sold. In the absence of evidence of fraud, therefore, this furnishes no ground for setting aside the sale. *Fairman* v. *Peck,* 87 Ill. 156; *Bush* v. *Sherman,* 80 id. 160.

The objection that the property was sold *en masse* is not supported by the record. It appears that "said premises" were "*severally* offered for sale at public auction, to highest bidder, for cash, and Matthews  *  *  *  having bid for said several tracts of land, severally, the sum of $1000 each," was declared the purchaser.

The mere inadequacy of the price bid was not so gross as to raise a presumption of fraud, or furnish ground for setting aside the sale.

The proof, however, does show that the sale was conducted by Mr. Pratt, in the absence of Prather, and that Matthews' bid was in reality for the benefit of Prather, and not, in good faith, with the view of acquiring title in himself. These, undoubtedly, are good grounds for setting aside the sale, but they do not render the sale absolutely void, but voidable only; and the owner having knowledge of them, may elect to abide by the sale or to disaffirm it, as he pleases. But having this right of election, he must exercise it within a reasonable time, and before innocent third parties have invested money and labor upon the faith of its validity, and if he shall not do so, he will be barred from setting it aside. *Hamilton* v. *Lubukee et al.* 51 Ill. 415; *Munn* v. *Burges,* 70 id. 606; *Mulvey* v. *Gibbons,* 87 id. 367; *McHany* v. *Schenk,* 88 id. 357.

Walker himself testifies, that he was at the sale, and that it was made by Pratt, of the firm of McCoy & Pratt, who struck off the property to John W. Matthews. He, of course, knew, and he testifies as a fact, that Prather was not present at the sale. He, of his own knowledge, knew how the property was bid off, and the proof clearly shows that he knew that Matthews was bidding for Prather, and not for himself.

After the sale, probably the same day, at farthest the next day forenoon, Walker entered into an agreement with McCoy & Pratt, the attorneys for Prather, whereby it was agreed that he should have the right to furnish a party within four months from that time to buy the property for Prather's

debt, interest, and $200 for expenses. This, of itself, was ample notice that Matthews' purchase was for the benefit of Prather alone. He, then, at the time of the sale, or within a few hours afterwards, knew of every objection which his assignee now brings forward in his cross-bill against the validity of the sale. In our opinion, this agreement was, itself, an election to treat the sale as valid.

But the sale to Cooper was made through Pierce, as Cooper's agent, or rather the agent of the Oro Mining Company, for whom Cooper was in fact trustee, and the proof is ample.that the purchase was without notice of any of the irregularities now complained of. He asked Pratt about the title, and Pratt told him that he knew nothing about the title prior to the foreclosure, but that—i. e. the foreclosure—was all right. He investigated the title as best he could, and came to the conclusion that it was all right. It is true, he says, "Pratt told me at the time that Matthews bid it in for the bank,—I understood it was the Corn Exchange Bank," and it is contended this was notice that Matthews purchased for the trustee. Directly the reverse seems to us to be true. Prather was the trustee and the *cestui que trust*, as appears by the record. The Corn Exchange Bank is not shown to have had any connection whatever with the mortgage,—certainly no reason is disclosed why it might not, through Matthews or otherwise, have become the purchaser of the property. But even if it be conceded that he knew that Matthews purchased for Prather, he must also have known the further fact that Walker was present at the sale, being cognizant of that fact, and subsequently bargained for the right to have four months after the sale to procure a purchaser of the title then sold and conveyed to Matthews. That time had elapsed, Walker had procured no purchaser, and evinced no disposition to disaffirm the sale. It would seem that any prudent man, in full knowledge of the facts as they transpired, would have concluded it was safe to invest in the property.

Walker again says: "I understood they (meaning Prather, or rather those who controlled the title for him,) were about to sell." This, from other facts proved, evidently had reference to the sale to Cooper, but he did not interfere. He made no effort to prevent the sale, but allowed the parties to go on and invest their money, upon the assumption that Matthews could convey all of his (Walker's) title.

Again, when blocks 100 and 107 were about being purchased by the Northwestern Leather Company, instead of giving notice of his claim to the property he went to those trying to effect the negotiation, and endeavored to sell them other property, but uttered not a syllable in regard to his claim to these blocks. He lay by and permitted that company to go on investing a large sum in the purchase, and many thousand dollars in improvements upon the property, without asserting or attempting to assert any claim to it.

We think, under all the circumstances, Walker has been guilty of gross *laches* in electing to disaffirm and avoid the sale, and on that ground the cross-bill was properly dismissed. And we think, moreover, under all the circumstances proved, that, waiving the objection of *laches*, the owners of the property are entitled to be protected as purchasers in good faith, and without notice of the irregularities in the sale.

The decree is affirmed.

*Decree affirmed.*