SAMUEL H. KERFOOT

*v.*

ALBERT M. BILLINGS *et al.*

*Filed at Ottawa March 28, 1896.*

| | |
|---|---|
| 160 | 563 |
| 173 | 392 |
| 160 | 563 |
| 181 | 134 |
| 160 | 563 |
| 199 | 1 32 |
| 160 | 563 |
| 200 | 1184 |
| 200 | 2185 |
| 160 | 563 |
| 114a | 1167 |

1. LACHES—*when defense of laches may be made by demurrer.* The defense of *laches* appearing upon the face of a bill in equity, which bill fails to set forth facts excusing the delay, may be set up by demurrer, either general or special.

2. SAME—*delay of seventeen years in attacking trustee's sale defeats relief.* An unexplained delay of seventeen years in filing a bill to set aside a sale of land by a trustee in a deed of trust upon the ground of mere irregularities in the sale, is such *laches* as will defeat relief.

3. SAME—*mere assertions of a right do not keep it alive.* Assertion of the invalidity of a trustee's sale by advertising in a newspaper, by written notice to the trustee at the time of sale, and by afterwards recording a manuscript statement of the grounds of such alleged invalidity, unaccompanied by any act to give effect to the claim, will not keep alive a right otherwise barred by *laches.*

4. TRUSTS—*failure of trustee to sell land in separate parcels.* Fraud or prejudice to some one must be shown as the result of a failure of a trustee to sell the trust lands in separate parcels, before equity will set the sale aside on that ground.

5. SAME—*effect of inadequacy of price in trustee's sale.* Inadequacy of price, (unless so gross as to raise a presumption of fraud,) unaccompanied by serious irregularities in the mode of sale or by circumstances of unfairness toward the debtor, is not ground for setting aside a trustee's sale.

6. SAME—*effect of over-stating indebtedness in trustee's notice of sale.* Describing too large an indebtedness in a trustee's notice of sale is not ground for setting the sale aside, unless done with a fraudulent design, or unless it injuriously affected the property or deterred bidders.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is a bill, filed by appellant to redeem certain real estate from a sale thereof by appellee Bishop, as trustee, under a power of sale in the trust deed hereinafter described, to the appellee Albert M. Billings. General and special demurrers were filed to the bill. The demurrers

were sustained by the trial court, and the bill was dismissed for want of equity, with order that costs be paid by complainant. The present appeal is prosecuted from such decree of dismissal.

The bill was filed on January 19, 1895, and alleges, that, on October 5, 1870, complainant owned the south half of block twenty-five (25) in Kinzie's addition to Chicago and a certain lot numbered three (3), containing nineteen acres; that, on said 5th day of October, 1870, complainant made his note to his own order and by himself endorsed, for $10,000.00, payable two months after date, with interest at the rate of ten per cent per annum, and on said day borrowed $10,000.00 from one Bartow and gave him said note as security, and to secure the payment thereof, on that day executed to appellee, Bishop, a deed of trust upon said premises, which deed of trust was recorded in the recorder's office of Cook county on October 6, 1870, and re-filed for record therein on March 12, 1878; that complainant paid to Bartow the interest on said note until April 16, 1872, and on the latter date "borrowed from J. Irving Pearce of said city of Chicago, the sum of $10,000.00, with which money orator took up from said Bartow said above described note (which by orator was called the Bartow note) and the said trust deed, and placed the same in the hands of said Pearce as security for the said sum so by said Pearce loaned to orator; and it was then and there agreed by and between orator and said Pearce, in consideration of said Pearce making said loan to orator, orator should pay and Pearce should receive, interest upon said note from said 16th day of April, 1872, at the rate of one and one-fourth (1¼) per cent per month;" that thereafter orator paid usurious interest on said debt to said Pearce in various amounts up to August 1, 1873; that, since October 1, 1873, orator has paid no interest to Pearce or any one else upon said note; and orator pleads the statute of this State relating to interest and relies thereon; that about the 26th day of Novem-

ber, 1877, Pearce turned over the said Bartow note to said Billings as collateral security for certain notes of the firm of Pearce & Benjamin, of which said Pearce was a member; and that nothing of principal or interest has ever been paid on account of said Bartow note since August 1, 1873.

The bill further alleges, that, at the time of the turning over by Pearce to Billings of said Bartow note as collateral security, it was past due and subject to the equities existing in favor of orator by reason of the usurious payments aforesaid; that Bishop, the trustee, on March 1, 1878, at the request of Billings who then held said note only as collateral security, published a notice that said premises would be offered by him for sale at public auction on April 6, 1878, at the north door of the court house in Chicago, which said notice bore date February 27, 1878; that orator caused to be published in the same paper in which said notice of sale was published, on April 4, 1878, immediately following and under and adjoining and attached to said notice of sale, thus making it a part thereof, the following announcement, to-wit: "The indebtedness mentioned in the foregoing notice of sale as secured by trust deed, under which said sale is so advertised to be made, does not at all amount to the sum therein stated as due. The note, said to be secured by said trust deed, was assigned a long time after its maturity and is open to large outstanding equities. On these and other grounds the said sale and any deed made thereunder will be contested by the undersigned and other parties in interest.—Signed, Samuel H. Kerfoot, dated April 4, 1878;" that the statements made by orator in his said notice were true; that on April 6, 1878, an agent of orator at a quarter before ten in the morning on which, at eleven o'clock, said sale was advertised to take place, handed to said Bishop, trustee, the following original letter written by orator, to-wit:

"CHICAGO, *April 6, 1878.*

"*Henry W. Bishop, Esq., trustee, etc., Chicago:*

"DEAR SIR—I send you this formal notice, in order to due diligence and protest on my part, that the sale advertised by you as trustee * * * to take place this day at eleven o'clock, should not take place for the reason, among others, that there are large outstanding equities and offsets against the indebtedness originally secured by that trust deed and that no sale should be made until all these points are adjusted. The paper was due two months after its date, and has been the property of the present holder only a short time.

"Truly, etc., SAMUEL H. KERFOOT."

That orator's agent then and there read to Bishop and handed to him a copy of said notice so published by orator in said newspaper and at the same time gave notice to said Bishop, that he, the said agent, would be present in person at said sale and would then and there read a copy of said notice to whomsoever might be there; that, at eleven. o'clock on said morning, said agent went to the north door of said court house and in the hearing of said trustee and of two attorneys of said Billings and before any bid was made, read to the said Bishop and said attorneys the said notice of your orator; that your orator's agent was present at the sale until the conclusion thereof; that no other persons were there except the trustee and said two attorneys and orator's said agent; that said agent heard and saw all that transpired at said sale ; that the south half of block 25 was struck off to said attorney for said Billings for $4000 and said lot 3 was struck off to said attorney for said Billings for $5700 ; that, on said 6th day of April, 1878, Bishop, as trustee, executed a trustee's deed of said premises so sold to said Billings, which was recorded on April 9, 1878.

The bill further alleges, that the sums so bid at said sale were greatly less than the then value of said premises and constituted a grossly inadequate price therefor

and were less than one-half of what said premises were then worth in the market, and that the said trustee and said attorneys had knowledge of said gross inadequacy; that thereafter, on February 3, 1882, orator prepared a certain manuscript statement and swore to the same, which said statement was filed for record in said recorder's office on May 21, 1884. Said manuscript statement so recorded on May 21, 1884, after reciting the execution of said trust deed and of said trustee's deed, proceeded to state that said trustee's deed was of no force or effect, and that orator would contest the validity of said trust deed and trustee's deed and all the steps taken thereunder as heretofore set forth upon the ground of want of authority to said Bishop to make such deed, insufficiency and irregularity of the notice of sale, misstatements in such notice, the warning published by orator in the newspaper containing said notice and following the same and dated April 4, 1878, the reading of said warning notice by orator's agent at said sale; and said manuscript statement closed with saying, that "on said grounds with others to be hereafter made known and sustained when occasion shall offer and require, the undersigned and other parties in interest, as above and in said warning notice stated, will at law and in equity defend their rights to said land and premises against the wrongs above set forth;" which manuscript statement was signed by Samuel H. Kerfoot.

The bill further alleges, that the record of said trust deed, together with the said records of Cook county, were destroyed by fire in October, 1871; that at the time of said sale, said lot 3 was divided into four separate and distinct parts; that all of said lot 3 was sold *en masse* and was offered for sale as a whole and not in parcels; that on said 5th day of October, 1870, and said 16th day of April, 1872, and on said 6th day of April, 1878, and on said 9th day of April, 1878, "and continuously during all of said time, orator was in quiet, peaceable and undisturbed possession of all the above described premises,

and that, for a considerable length of time subsequent to the said last named date, orator continued in such possession, both personally and by his tenants,  * , *  * until the said Billings obtained possession of said premises by inducing the said tenants to attorn to him."

The bill further avers, that, at the time of making said sale and said trustee's deed, said Billings held said note as collateral security and that he now holds the legal title to said real estate only as security for the indebtedness for which said note and trust deed were pledged to him as collateral security, subject to your orator's right to redeem from said sale upon payment of the amount due from him upon his said note; that Billings has never made any conveyance of said premises but still holds the legal title thereto; that orator is willing and offers to pay the principal of said note with interest at the rate of six per cent per annum from April 16, 1872, applying as credit thereon, said usurious payments of interest, and also is willing and offers to pay all the taxes and assessments, with the legal interest, which Billings has paid thereon, after allowing for all rents and profits received by Billings. The bill prays for an accounting and for a decree, granting the right to redeem said premises from said sale, and requiring Billings to deed the same to orator, and ordering that said sale and trustee's deed may be set aside upon the ground of irregularity in the notice of sale, for misstating the amount due upon the note, and upon the ground of the inadequacy of price for which the premises were sold and other irregularities of said sale.

The special grounds of demurrer set up were as follows: First, that the complainant hath not in and by his said bill, made and stated such a case as doth or ought to entitle him to any such discovery or relief as thereby sought and prayed for; second, that the complainant is guilty of gross *laches;* third, that the complainant has a complete and adequate remedy at law.

JOHN P. AHRENS, for appellant.

WINSTON & MEAGHER, and E. PARMALEE PRENTICE, (SILAS H. STRAWN, of counsel,) for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In determining whether the demurrer to the bill in this case was properly sustained, it will be necessary to ascertain, whether the bill shows upon its face that appellant was guilty of *laches* in delaying the filing of it, and whether, if such *laches* does appear upon the face of the bill, the question of *laches* can be raised by demurrer. The latter branch of the inquiry will be considered first.

*First*—At one time it seems to have been held in England, that the objection, arising from lapse of time apparent on the face of the bill, could not be taken advantage of by demurrer. . But a contrary doctrine was subsequently announced and is now fully established by the English decisions. The rule, as deduced from these later decisions, has been stated as follows: "Where great lapse of time, gross *laches*, or long and unexplained acquiescence on the plaintiff's part clearly appears upon the bill, even in cases where there is no statutory bar, the defense may be taken by demurrer." (Story's Eq. Pl.—9th ed.—sec. 503, notes 4 and (*b*); 1 Daniell's Ch. Pl. & Pr.— 6th Am. ed.—marg. p. 560, notes 9, 10, 1 and (*a*); *Hovenden* v. *Lord Annesly*, 2 Sch. & Lef. 607; *Hardy* v. *Reeves*, 4 Ves. 466; *Foster* v. *Hodgson*, 19 Ves. 180).

The same rule prevails in the Federal courts in this country, and is thus stated in *Speidel* v. *Henrici*, 120 U. S. 377: "When the bill shows upon its face that the plaintiff, by reason of lapse of time and of his own *laches*, is not entitled to relief, the objection may be taken by demurrer." (See, also, *Maxwell* v. *Kennedy*, 8 How. 210; *Lansdale* v. *Smith*, 106 U. S. 392).

In New York the rule has been thus stated: "It was formerly doubted whether a defendant in equity could by demurrer make the objection, that the remedy was barred by lapse of time, or whether he must not resort to his plea. But it now seems to be settled, that, if it appear upon the face of the bill that the suit is barred by lapse of time, the defendant may demur." (*Humbert* v. *Trinity Church*, 7 Paige, 195; *Van Hook* v. *Whitlock*, id. 373). See, also, 12 Am. & Eng. Ency. of Law, p. 609, and cases in notes.

The reason of the rule thus laid down is, that the powers of a court of chancery cannot be called into action, unless there appears to have been reasonable diligence, as well as good faith. It is a settled rule with courts of equity, that they will refuse their aid to those who have delayed for an unreasonable length of time to assert their claims, and, when the case stated by the bill shows that there has been such unreasonable delay, there is no reason why the defendant should not be allowed to present the objection by demurrer, without being forced to bring it to the notice of the court by plea or answer. (*Maxwell* v. *Kennedy*, *supra; Marsh* v. *Whitmore*, 21 Wall. 178.)

In *School Trustees* v. *Wright*, 12 Ill. 432, it was said (p. 441): "It is a familiar principle of equity that a defendant cannot avail himself of the benefit of the Statute of Frauds, or of Limitations, unless he specially relies thereon by answer, plea or demurrer. * * * He must give the complainant an opportunity to show by averments and proof, that the case is not within the operation of the statute." It will be noticed that in the *Wright case*, the complainant is required to rely upon the lapse of time as a defense "by answer, plea or demurrer." The scope of that decision is, that, if the defense is relied upon by demurrer, it is equally as available as though set up in answer or plea, and that the defendant must rely upon it by his pleading, whether that pleading be answer or plea or demurrer, so that he will not be under-

stood to have waived it. The reason there given for requiring the objection arising from length of time to be brought to the attention of the court by the pleading of the defendant is, that the complainant may have "an opportunity to amend his bill by inserting allegations accounting for the delay, so as to thereby lay a foundation for the introduction of proof to sustain the bill against the objection." (*Hall* v. *Fullerton*, 69 Ill. 448). While the case of *Hall* v. *Fullerton*, *supra*, in commenting upon the case of *School Trustees* v. *Wright*, *supra*, refers to the failure to set up the defense in the *answer*, yet it was not intended to limit the right to make the objection to the answer alone. The point made by counsel in the *Hall case* was, that the *laches* had not been pleaded in the *answer;* and so, the court in answering the point, referred to the answer, but the reason, given for the ruling in the *Wright case*, namely, that the complainant may amend his bill by inserting allegations accounting for the delay, applies as well to demurrer as to answer. Even if the attention of the complainant is called to the matter of *laches* appearing on the face of his bill by the argument of a general demurrer thereto, he will have an opportunity to ask for leave to amend the bill, so as to make allegations accounting for the delay. But where the demurrer is a special one, setting up the *laches* specifically as a cause of objection to the bill, the opportunity of amending the bill is afforded as distinctly as though the *laches* was pleaded in the answer. In the case at bar, there was a special demurrer assigning, as one of the special grounds, "that the complainant is guilty of gross *laches*."

Notwithstanding this special demurrer, complainant did not ask leave to amend his bill so as to state therein the reasons, if there were any, for the *laches* to which the special demurrer called his attention.

In the case of *Hall* v. *Fullerton*, *supra*, the complainant set up in his bill his excuse for the delay in filing it, and,

for that reason it was said, that the defendant was not bound to call attention to the delay by any pleading of his, because it was unnecessary to amend the bill for the purpose of stating an excuse when the excuse was already stated; but it was also said that complainant did not offer any proof to establish the truth of his excuse as set up in his bill, and it was held, that, on that account, the defense of *laches* in bringing the suit was available to the defendant there, although it was not set up by him in his answer. The *Hall case* seems to be authority for the position, that, "if the evidence shows *laches* on the part of a plaintiff, objection may be taken at the hearing, and relief will be denied." (12 Am. & Eng. Ency. of Law, p. 609).

In *Furlong, Admx.* v. *Riley,* 103 Ill. 628, the bill or petition undertook to account for the delay, and there was a demurrer filed; it was there held, that the demurrer was properly sustained, because the facts alleged did not show a sufficient excuse for the delay. In the *Riley case, supra,* the demurrer alleged, as a special ground, that the relief prayed for was barred by the delay in filing the petition, and we there said (p. 631): "Indeed, where the *laches* of a complainant sufficient to bar a recovery appears on the face of a bill, no reason is perceived which would prevent a defendant from raising the question as to the sufficiency of the bill as well by demurrer as by answer, and this is believed to be fully sustained by the authorities. See Story's Equity Pleading, secs. 484, 751, and cases there cited."

We have held in a number of cases that, if the bar of the Statute of Limitations appears on the face of the bill, and no circumstances are alleged to take the case out of the statute, the bill will be obnoxious to a demurrer. (*Henry County* v. *Winnebago Drainage Co.* 52 Ill. 299; *Same* v. *Same,* id. 454; *Ilett* v. *Collins,* 103 id. 74; *Bell* v. *Johnson,* 111 id. 374). We see no reason why the same rule, which applies where the bar of the Statute of Limitations appears upon the face of the bill, should not also apply

where *laches* amounting to a bar in equity appears upon the face of the bill. The tendency of the more recent decisions in this State has been to modify the strict rule laid down in *School Trustees* v. *Wright, supra.* In *Hall* v. *Fullerton, supra,* it was said of the decision in the *Wright case,* that it was "one not to be extended to a case where the reason there given does not apply." In *Walker* v. *Ray,* 111 Ill. 315, where there was a delay of more than twenty years in filing a bill for specific performance and the bill alleged no excuse for the delay, it was held, that the bill showed no right to relief, and we there said (p. 321): "Had a demurrer been interposed, it would have been sustained, because there was no equity on the face of the bill. So far as anything is here said in conflict with the case of *School Trustees* v. *Wright,* 12 Ill. 432, it is intended to overrule that case to that extent."

Our conclusion is, that, where a bill shows *laches* upon its face, and fails to set forth any excuse for an earlier prosecution of the suit, the defense of *laches* on the part of the complainant may be set up under demurrer either general or special. (Beach's Mod. Eq. Pr. secs. 106, 258, and cases there cited).

*Second*—The next question is, whether the bill shows upon its face, that the complainant was guilty of *laches* in not sooner beginning his suit.

The bill is filed to redeem from a sale under a trust deed nearly seventeen years after the sale was made. No reason or excuse is given in the bill for this long delay. The grounds, upon which the sale is attacked, amount to nothing more than mere irregularities. The complainant was present by his agent at the sale, and had full knowledge, as early as the day of sale, of all the irregularities of which he now complains.

"The rule is that the owner of the equity of redemption should avail himself in apt time of irregularities in a sale under a power of sale in a mortgage or deed of trust, and that his failure to do so will constitute *laches.*"

(*Irish* v. *Antioch College*, 126 Ill. 474). "It is not permissible for a party to lie by and await events, and have the power at any time in the future, to let the sale stand, or avoid it, according as it may be found then for his interest to do. There should be promptitude of action within a reasonable time." (*Hoyt* v. *Pawtucket Inst. for Savings*, 110. Ill. 390). We think that, under the circumstances shown upon the face of the bill in this case, seventeen years was an unreasonable delay. (*Lequatte* v. *Drury*, 101 Ill. 77; *Dobbins* v. *Wilson*, 107 id. 17; *Hoyt* v. *Pawtucket Inst. for Savings, supra; Howe* v. *South Park Comrs.* 119 Ill. 101; *Speck* v. *Pullman Palace Car Co.* 121 id. 33; *Irish* v. *Antioch College, supra; Bates* v. *Gillett*, 132 Ill. 287; *Cornell* v. *Newkirk*, 144 id. 241; *Connely* v. *Rue*, 148 id. 207). A party, who attacks a sale on account of irregularities therein, must be diligent in discovering the alleged causes for avoiding it, and diligent in his application for relief; and numerous cases have been decided where delay for a much less period than that fixed by the Statute of Limitations has been held to preclude the right of the party to bring suit. (*Bush* v. *Sherman*, 80 Ill. 160; *Williams* v. *Rhodes*, 81 id. 571).

The bill shows, that the appellant made a written assertion of his claim, and of his intention to contest the action of the trustee in advertising and making the sale, by publishing a written notice before the sale, by reading a written notice to the trustee at the sale, and by recording a manuscript statement of the grounds, on which he claimed the sale to be invalid, on May 21, 1884, more than six years after the sale had taken place. But the continual assertion of a claim, unaccompanied by any act to give effect to it, will not keep alive a right which would otherwise be barred by *laches*. (*Clegg* v. *Edmondson*, 8 DeG., M. & G. 787; *Lehmann* v. *McArthur*, L. R. 3 Ch. 496; 12 Am. & Eng. Ency. of Law, p. 552).

It is urged as an objection to the sale, that lot 3 was sold *en masse*. But "it is only on the ground of fraud, or that some one has been prejudiced by the sale of lands

*en masse*, that the sale will be set aside in equity because the property was not sold in separate parcels." (*Ross* v. *Mead*, 5 Gilm. 171; *Fairman* v. *Peck*, 87 Ill. 156). There is here no allegation that the trustee was guilty of any fraud, nor does it appear that appellant was prejudiced by the sale *en masse*.

It is urged as a further objection to the sale, that the property was sold for an inadequate price. A sale will not be set aside for mere inadequacy of price, unless the inadequacy is so gross as to raise a presumption of fraud, or unless, in addition to such inadequacy, there are serious irregularities in the mode of sale or circumstances of unfairness towards the debtor. (*Connely* v. *Rue*, 148 Ill. 207; *Parker* v. *Shannon*, 137 id. 376; *Williamson* v. *Stone*, 128 id. 129). The bill here does not allege the existence of any such attendant conditions as would make inadequacy of price a just ground for the interposition of a court of equity. On the contrary, the bill shows, that, if there were fewer bidders at the sale than there ought to have been, or if there were lower bids than should have been made, these results may have been due as much to the efforts of appellant to cast discredit upon the sale as to any other alleged cause. While the utmost fairness must be observed in the execution of such a power of sale as was embodied in the trust deed made by appellant, yet "such strictness and literal compliance should not be exacted as would destroy the power. This would render valueless the security intended to be afforded." (*Waller* v. *Arnold*, 71 Ill. 350).

The objection, that the notice of sale described a larger indebtedness than that which was secured by the trust deed cannot here avail for the purpose of setting the sale aside, because there is nothing in the bill to show that such defect in the notice was chargeable to any fraudulent design, or operated to injuriously affect the property or to deter bidders from the sale. (*Fairman* v. *Peck*, *supra*).

For the reasons thus stated we are of the opinion that the claim of appellant is barred by *laches*. There was, therefore, no error in sustaining the demurrer to the bill and dismissing the same for want of equity.

The decree of the Superior Court of Cook county is accordingly affirmed.                    *Decree affirmed.*